COPY

FILED

10 OCT -4 PM 4: 26

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:

MARC E. MAYER (SBN 190969)
mem@msk.com
JILL P. RUBIN (SBN 240019)
jpr@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Blizzard Entertainment, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BLIZZARD ENTERTAINMENT, INC. a Delaware Corporation,

Blizzard,

v.

MICHAEL VANKUIPERS a/k/a "Perma" or "Permaphrost," an individual; MICHAEL SIMPSON a/k/a Matt Cooper, a/k/a Cranix" and "Cranyx"; JOHN ROE a/k/a "linuxawesome" and DOES 1 through 10, inclusive.

Defendants.

CASE NO. SACV10-1495-CJC(MLGx)

**COMPLAINT FOR:**

(1) COPYRIGHT INFRINGEMENT
(2) INDUCEMENT TO INFRINGE COPYRIGHTS
(3) CONTRIBUTORY COPYRIGHT INFRINGEMENT
(4) VICARIOUS COPYRIGHT INFRINGEMENT
(5) BREACH OF CONTRACT
(6) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

DEMAND FOR JURY TRIAL

Blizzard Entertainment, Inc. ("Blizzard") avers as follows:

## Preliminary Statement

1. Blizzard is a developer and publisher of computer games and related entertainment products. Blizzard is known for the high quality and extremely high production values of its computer games, which include the most popular computer game franchises in the world, such as "World of Warcraft," "Diablo" and "StarCraft." Blizzard's most recent computer game product, "StarCraft II," was released on July 27, 2010, after years of anticipation. Just two months after its

release to the public, StarCraft II became the most popular PC software product currently sold in the United States and is one of the most critically acclaimed computer games ever released.

2. At issue in this lawsuit is the insidious and harmful practice of developing, distributing, and selling software products (sometimes referred to as "hacks" or "cheats") that modify or alter the online "multiplayer" component of Blizzard's computer games to give users of the "hacks" or "cheats" an unfair competitive advantage against other players. These hacks and cheats not only disrupt or impair the online experience for purchasers of the computer game, but, as set forth more fully herein, cause serious and irreparable harm to Blizzard and its products.

3. Defendants are software programmers, or "hackers" who operate, collaborate on, and distribute unlawful hacks and cheats via a number of Internet websites, including the website www.gamethreat.net (the "Hacks Website"). Just days after the release of StarCraft II, Defendants already had developed, marketed, and distributed to the public a variety of hacks and cheats designed to modify (and in fact destroy) the StarCraft II online game experience. In fact, on the very day that StarCraft II was released, representatives of the Hacks Website advised members of the public that "our staff is already planning new releases for this game."

4. Defendants create and sell their unlawful software products with the knowledge that they are facilitating and promoting users to infringe Blizzard's copyrights and to breach their contracts with Blizzard. Blizzard has notified both of the named defendants (VanKuipers and Simpson) of their infringing conduct, and neither has ceased their infringing activity. In fact, Defendant VanKuipers, after first representing to Blizzard that he would disable and remove one of his unlawful hacks, then bragged online that Blizzard "was unaware" of his work on similar hacks, and that he would "provide [others] with the source code and

knowledge" to continue distributing his hacks. Among those that he provided his "source code" and "knowledge" were Defendant John Doe a/k/a "Wiggley," who, pursuant to online posts available on the Hacks Website, is now the individual responsible for distributing and updating one of VanKuipers' popular unlawful hacks.

5. Defendants' actions have unjustly profited Defendants while causing significant damage to Blizzard. The acts of Defendants, described in more detail below, constitute direct and secondary infringement of registered copyrights in violation of the Copyright Act, 17 U.S.C. §501; breach of contact; and intentional interference with contractual relations.

## JURISDICTION AND VENUE

6. This is a civil action seeking damages and injunctive relief under the Copyright Act, 17 U.S.C. § 101 et seq., and under the laws of the State of California and the State of Delaware.

7. This Court has subject matter jurisdiction over Blizzard's claims for copyright infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a). Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Blizzard's state law claims for breach of contract and intentional interference with contract in that they are so related to Blizzard's claims under the Copyright Act as to be part of the same case or controversy.

8. This Court has personal jurisdiction over Defendants, including because Defendants have engaged in, contributed to, and induced the infringing conduct at issue within the United States and the State of California and among other things, have purposefully directed their activities at the United States and at California. Blizzard additionally avers that, among other things, (a) each of the Defendants or their respective agents are doing or have been doing business continuously in the State of California and this District, (b) a substantial part of the

wrongful acts committed by Defendants, and each of them, have occurred in interstate commerce, in the State of California, and in the Central District of California, (c) Defendants know that the damages and other harmful effects of Defendants' infringing activities occur in the United States and primarily in California, where Blizzard has its principal place of business, and (d) Defendants' infringing activities are part of a joint, international effort among defendants residing within the United States and outside the United States.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because this is a judicial District in which a substantial part of the events giving rise to the claims occurred, and/or which Blizzard's injury was suffered.

**THE PARTIES**

10. Blizzard is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Irvine, California.

11. Blizzard is, and at all relevant times has been, the owner of copyrights in numerous computer software entertainment products, including the computer game "StarCraft II: Wings of Liberty" ("StarCraft II"). StarCraft II is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights. Blizzard's copyright in StarCraft II covers nearly all aspects of the game as distributed, including without limitation, (a) all of the human and machine readable computer code and any other data distributed as part of the game client, (b) all graphical and textual elements of the screens that appear in the game client when the game is executed on a personal computer, (c) all graphical and textual elements of documents distributed with the game client, and (d) all motion picture and sound recordings, and other audio-visual elements distributed with and as part of the game client.

12. Blizzard is informed and believes, and on that basis avers, that each of the Defendants herein is engaged in the development, sale and/or distribution of

software products designed to modify or hack online computer games, including StarCraft II. The primary purpose of such software products is to give users of such products certain unfair competitive advantages (i.e. to allow users to cheat) in online computer games, including without limitation the hacks entitled "[Undetected] Perma's Starcraft II Maphack," "Havok," "CraniX Maphack," "Open Source External Map Hack for SC2 1.1" and other related or similar software programs (the "Hacks").

13. Blizzard is informed and believes, and on that basis avers, that Defendant Michael VanKuipers a/k/a "Perma" and "Permaphrost" is an individual residing in Burnaby, Canada. Blizzard is informed and believes, and on that basis avers, that VanKuipers is the author, developer and distributor of "[Undetected] Perma's Starcraft II Maphack" and "Havok," and is a driving force behind gamethreat.com.

14. Blizzard is informed and believes, and on that basis avers, that Defendant Michael Simpson a/k/a Matt Cooper, a/k/a "Cranix" and "Cranyx" is an individual residing in Banff, Canada. Blizzard is informed and believes, and on that basis avers, Simpson is the author, developer and distributor of "CraniX Maphack," and is a driving force behind sc2hackdev.org and other websites.

15. Blizzard is informed and believes, and on that basis avers, that Defendant John Roe a/k/a "linuxawesome" is an individual residing in Lima, Peru. Blizzard is informed and believes, and on that basis avers, "linuxawesome" is the author, developer, and distributor of "Open Source External Map Hack for SC2 1.1" and directly participated in, authorized, and caused the conduct described in this complaint.

16. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as Does 1 through 10, inclusive, are unknown to Blizzard, which sue said defendants by such fictitious names (the "Doe Defendants"). The Doe Defendants may include individuals whose real

identities are not yet known to Blizzard, but who are acting in concert with the named defendants, often in the guise of Internet aliases, in committing the unlawful acts alleged herein. Does 1 through 10 may use the aliases "Wiggley," "Zynastor," and "Dark Mage" in connection with their hacking activities. If necessary, Blizzard will seek leave to amend this complaint to state their true names and capacities. Blizzard is informed and believes, and on that basis avers, that the Doe Defendants are liable to Blizzard as a result of their participation in all or some of the acts hereinafter set forth (all of the Defendants, including the Doe Defendants, collectively are referred to as "Defendants").

## FACTS APPLICABLE TO ALL CLAIMS

### Blizzard's StarCraft® Computer Games

17. Blizzard is a computer game publisher, engaged in the business of developing, financing, producing, marketing, and distributing high-quality software game products for personal computers (PCs). Among the software products produced and distributed by Blizzard are some of the most popular computer games in the world, including the StarCraft® series of games, as well as the massively popular Diablo®, Warcraft® and World of Warcraft® gaming franchises. Since establishing the Blizzard label in 1994, Blizzard has become one of the world's most respected and popular makers of computer games. Many of Blizzard's games, including the StarCraft® series of games, feature online game play over the Internet via an online gaming service known as "Battle.net" provided by Blizzard ("Battle.net"). Over 11 million individuals actively play Blizzard's games online.

18. The StarCraft® series of computer games has become one of Blizzard's flagship properties, and currently consists of two games: "StarCraft" and "StarCraft II: Wings of Liberty" ("StarCraft II"). The StarCraft® series of games are widely considered among the best in their genre, and StarCraft II is

reported to have sold more than 1.5 million units of the game in the 48 hours after it was released to the public.

19. StarCraft II is a military science fiction "real-time strategy" computer game, by which the player plays one of three military factions competing to achieve certain military objectives on a computer-generated "map." The software code responsible for the extensive and richly detailed creative elements of the StarCraft II gaming environment is a copyrighted work owned by Blizzard.

20. Among the most important features of StarCraft II are its robust "multiplayer" modes, which enable multiple players to compete against each other via a connection to the Internet. The multiplayer environment often is highly competitive, with players being awarded "ranks," placed on public "leaderboards," or given access to unique weapons or abilities based on their performance. The competitive aspect of StarCraft II's multiplayer environment is one of the driving forces behind sales of the game. (In fact, the StarCraft® games are played as a competitive sport around the world, with professional or semi-professional players competing for national and international titles). Additionally, the ability to play the game against skilled human opponents keeps the player experience fresh and interesting, thus ensuring that players return to the game frequently, purchase and play the games (and downloadable content, such as new "maps" or "modes") long after the games' release, and encourage friends to purchase copies to join in the online experience.

21. Each copy of StarCraft II contains a "terms of use," which expressly prohibits the player from hacking or modifying the game, including to use hacks or cheats to alter the multiplayer experience. Additionally, in order to participate in the online multiplayer component of StarCraft II, players must agree to be bound by the terms of service of Blizzard's multiplayer network, Battle.net, that enables such multiplayer games to take place.

22. Unfortunately, the gaming experience of legitimate players of StarCraft II is under near constant attack by cheaters, scammers, and other wrongdoers seeking to exploit StarCraft II for their own illegitimate ends. For this reason, Blizzard seeks to protect the sanctity of the StarCraft II gaming experience through both contractual and technical measures.

**The StarCraft II End User License Agreement**

23. Prior to playing StarCraft II, users must install the game client on a personal computer. During that installation process, the game client displays a contract to the user called "STARCRAFT® II: WINGS OF LIBERTY™ END USER LICENSE AGREEMENT" ("EULA"). The EULA is attached hereto as Exhibit A and hereby is incorporated by reference.

24. Before playing the game for the first time, the user must manifest assent to the EULA by clicking on a button labeled "Accept." The user also may decline to enter into this contract by clicking a button labeled "Decline," at which point the game client will terminate, denying access to the user. If a user declines to accept the EULA, he or she may request and obtain a full refund of the purchase price.

25. The EULA sets forth the terms of a limited use license between Blizzard and the users of StarCraft II, pursuant to which Blizzard grants to the user, subject to the terms of the EULA, a "limited, non-transferable, non-sublicensable, non-exclusive license" to install the game on his or her computer, use the game for noncommercial entertainment purposes, and distribute the game to other users via the Battle.net game service. Any use of StarCraft II that is not in accordance with the EULA is expressly prohibited, is outside the scope of the limited license, and thus infringes Blizzard's copyrights.

26. Among other provisions, the EULA contains an express limitation on the license, which provides that the user may not "use cheats, automation software

(bots), hacks, or any other unauthorized third-party software designed to modify the Game experience, including without limitation, mods that violate the terms of this License Agreement or the Terms of Use."

27. Additionally, the EULA provides that users may not:

(a) "in whole or in part, copy or reproduce (except as provided herein), translate, reverse engineer, derive source code from, modify, disassemble, decompile, or create derivative works based on the Game…"

(b) "exploit the Game or any of its parts, including without limitation the Game Client, for any commercial purpose..."

(c) "host, provide or develop matchmaking services for the Game or intercept, emulate or redirect the communication protocols used by Blizzard in any way, for any purpose, including without limitation unauthorized play over the internet, network play, or as part of content aggregation networks..."

(d) "facilitate, create or maintain any unauthorized connection to the Game or the Service, including without limitation (a) any connection to any unauthorized server that emulates, or attempts to emulate, the Service; and (b) any connection using programs or tools not expressly approved by Blizzard."

28. The provisions of the EULA are designed to protect the integrity of the game. The EULA provides commercially reasonable contractual protection of Blizzard's rights in and to the game client and server elements of StarCraft II.

**The Battle.net Terms of Use**

29. Prior to playing StarCraft II, a user must create an account with Blizzard on Battle.net. During the account creation process, Blizzard displays a contract to the user called the Battle.net Terms of Use (the "ToU"). The ToU is attached hereto as Exhibit B and hereby is incorporated by reference.

30. In order to create a Battle.net account, the user must manifest assent to the ToU by clicking on a button labeled "Accept." The user also may decline to

enter into this contract by clicking on a button labeled "Decline," at which point the account creation process will terminate, denying access to the user.

31. Any use of the StarCraft II game client or access to the gaming environment that is not in accordance with the ToU is expressly prohibited.

32. Among other provisions, the ToU provides that the user may not, under any circumstances, "use cheats, automation software (bots), hacks, mods, or any other unauthorized third-party software designed to modify the [Battle.net] Service, any Game, or any Game experience." Additionally, the ToU prohibits modifying StarCraft II software or adding components to StarCraft II, including using tools to "hack or alter" StarCraft II software. The ToU also provides that the user may not "exploit the Game or any of its parts, including without limitation the Game Client, for any commercial purpose..."

33. The provisions of the ToU are designed to protect the integrity of the game by, among other things, preventing the very conduct demonstrated by the Defendants – providing certain players an unfair competitive advantage against other players. The ToU provides commercially reasonable contractual protection of Blizzard's rights in and to the game client for StarCraft II.

**Defendants' Unlawful Activities**

34. Blizzard is informed and believes, and on that basis avers, that each of Defendants, either individually or collectively, are engaged in the development, sale and/or distribution of software products (including without limitation, the Hacks) designed to modify or hack online games, including StarCraft II, in order to give users unfair competitive advantages (i.e. to allow users to cheat) in such games. For example, Defendants' "maphacks" permit one player to view the entirety of the playing field or "map", while the other player's view is limited.

35. Blizzard is informed and believes, and on that basis avers, that Defendants themselves developed the Hacks, commissioned third parties to

develop the Hacks, worked closely in concert with individuals who developed the Hacks, distributed the Hacks or caused the Hacks to be distributed, and/or otherwise participated in, directed, or oversaw the creation and distribution of the Hacks.

36. Blizzard is informed and believes, and on that basis avers, that Defendants themselves are users of the Hacks who when they download, install, and use the Hacks, copy StarCraft II copyrighted content into their computer's RAM in excess of the scope of their limited license, as set forth in the EULA and ToU.

37. Defendants are well aware that they do not have any license, right, or authority to engage in any of the foregoing infringing activities. It is well-known to the public, and Defendants certainly know, that Blizzard owns the copyright in StarCraft II, and never has authorized Defendants to develop and/or distribute Hacks or other software that modify StarCraft II or its online components. In fact, Blizzard is informed and believes, and on that basis avers, that each of Defendants reviewed and assented to the EULA and ToU, which specifically prohibits the creation, dissemination, and use of cheating and modification software such as the Hacks.

38. Defendants know that by distributing and selling the Hacks, they are encouraging and inducing their users to violate their terms of service and contracts with Blizzard and/or third party network providers. While some versions of the Hacks are available publicly, in order to conceal the full scope and nature of their infringing conduct, Defendants often do not offer downloads of the Hacks on any publicly accessible webpages, including publicly accessible pages of the Hacks Website. Instead, in many circumstances, upon payment of a fee (payable through third-party service PayPal or a credit card), members of the public are given an anonymous user account that grants them access to "underground" or "private" message boards. These message boards contain links to an online location where

the Hacks can downloaded by registered users. The "underground" Internet message boards, instruct users how to install the Hacks, how to use the Hacks, and how to avoid detection of the Hacks by other users or by anti-cheating technologies.

39. In addition to the foregoing, defendants VanKuipers and Simpson have been contacted by Blizzard and placed on notice of their infringing conduct. Simpson has failed to respond to Blizzard's contacts. VanKuipers purported to comply with Blizzard's requests that he cease his infringing activity, but then informed his customers that he would make one of his Hacks available through others. VanKuipers also openly represented to others that because Blizzard had not discovered other Hacks he was creating, he would continue to develop and support those Hacks.

40. The harm to Blizzard from Defendants' conduct is immediate, massive and irreparable. By distributing the Hacks to the public, Defendants cause serious harm to the value of StarCraft II. Among other things, Defendants irreparably harm the ability of Blizzard's legitimate customers (i.e. those who purchase and use unmodified games) to enjoy and participate in the competitive online experience. That, in turn, causes users to grow dissatisfied with the game, lose interest in the game, and communicate that dissatisfaction, thereby resulting in lost sales of the game or "add-on" packs and expansions thereto.

## COUNT I

### Direct Copyright Infringement

41. Blizzard realleges each and every allegation set forth in Paragraphs 1 through 40, inclusive, and incorporates them by reference herein.

42. Blizzard owns valid copyrights in StarCraft II.

43. Defendants have infringed Blizzard's copyrights in StarCraft II by reproducing, adapting, and distributing StarCraft II without authorization, in

violation of the Copyright Act, 17 U.S.C. §§ 106 and 501. Such infringing conduct includes, but is not limited to, (a) copying and adapting StarCraft II to create the Hacks (including in the process of reverse engineering or decompiling StarCraft II to create the Hacks); (b) creating a derivative work of StarCraft II by modifying it via the installation and use of the Hacks; and (c) copying StarCraft II into their computer's RAM (including at the time they use the Hacks) outside the scope of the license set forth in the EULA and ToU.

44. Each such infringement by Defendants of StarCraft II constitutes a separate and distinct act of infringement.

45. Defendants' acts of infringement are willful, in disregard of and with indifference to the rights of Blizzard.

46. As a direct and proximate result of the infringements by Defendants, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial which are not currently ascertainable. Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

47. Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

48. As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Blizzard is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzard's rights in StarCraft II. Blizzard is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

**COUNT II**

**Inducement to Infringe Copyright**

49. Blizzard realleges each and every allegation set forth in Paragraphs 1 through 48, inclusive, and incorporates them by reference herein.

50. When users of the Hacks download, install, and use the Hacks, they copy StarCraft II copyrighted content into their computer's RAM in excess of the scope of their limited license, as set forth in the EULA and ToU, and create derivative works of StarCraft II. In doing so, users of the Hacks infringe Blizzard's copyrights in StarCraft II, including by reproducing and publicly performing StarCraft II without authorization, in violation of the Copyright Act. 17 U.S.C. §§ 106 and 501.

51. Defendants have actively encouraged and induced users of the Hacks to engage in the foregoing copyright infringement, including, among other things, by promoting the Hacks and providing users of the Hacks with the tools to infringe, instructions on how to install and use the Hacks, instructions on how to use the Hacks in a manner least likely to be caught or arouse suspicion, and the ability to infringe anonymously. As a direct and proximate result of such inducement, Defendants' users have infringed Blizzard's rights in StarCraft II.

52. Each such infringement by users of the Hacks constitutes a separate and distinct act of infringement.

53. Defendants' acts of infringement were willful, in disregard of and with indifference to the rights of Blizzard.

54. As a direct and proximate result of the infringements by Defendants, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial which are not currently ascertainable. Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

55. Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

56. As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Blizzard is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzard's copyrights. Blizzard has no adequate remedy at law. Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

**COUNT III**

**Contributory Copyright Infringement**

57. Blizzard realleges each and every allegation set forth in Paragraphs 1 through 56, inclusive, and incorporates them by reference herein.

58. When users of the Hacks download, install, and use the Hacks, they copy StarCraft II copyrighted content into their computer's RAM in excess of the scope of their limited license, as set forth in the EULA and ToU, and create derivative works of StarCraft II. In doing so, users of the Hacks infringe Blizzard's copyrights in StarCraft II, including by reproducing and publicly performing StarCraft II without authorization, in violation of the Copyright Act. 17 U.S.C. §§ 106 and 501.

59. Defendants have actual and constructive knowledge of the infringements encouraged by the provision of the Hacks. Defendants have materially contributed to the foregoing infringements, including by creating the Hacks, making the Hacks available to the public, instructing users how to install and operate the Hacks, and updating and modifying the Hacks to ensure that they continue to function effectively despite Blizzard's attempts to disable them.

60. Each such infringement by users of the Hacks constitutes a separate and distinct act of infringement.

61. Defendants' acts of infringement were willful, in disregard of, and with indifference to, the rights of Blizzard.

62. As a direct and proximate result of the infringements by Defendants, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial which are not currently ascertainable. Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

63. Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

64. As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Blizzard is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzard's copyrights. Blizzard has no adequate remedy at law. Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT IV

### Vicarious Copyright Infringement

65. Blizzard realleges each and every allegation set forth in Paragraphs 1 through 64, inclusive, and incorporates them by reference herein.

66. When users of the Hacks download, install, and use the Hacks, they copy StarCraft II copyrighted content into their computer's RAM in excess of the scope of their limited license, as set forth in the EULA and ToU, and create derivative works of StarCraft II. In doing so, users of the Hacks infringe Blizzard's copyrights in StarCraft II, including by reproducing and publicly

performing StarCraft II without authorization, in violation of the Copyright Act. 17 U.S.C. §§ 106 and 501.

67. Defendants have the right and ability to supervise and control the infringing conduct of users of the Hacks. Defendants have failed and refused to exercise such supervision and control to limit infringement to the extent required by law. As a direct and proximate result of such refusal, users of the Hacks have infringed Blizzard's copyrights in StarCraft II.

68. Defendants derive a direct financial benefit from this infringement, including, but not limited to, from sales of the Hacks and from financial "donations" from users of the Hacks.

69. Each such infringement by users of the Hacks constitutes a separate and distinct act of infringement.

70. Defendants' acts of infringement were willful, in disregard of, and with indifference to, the rights of Blizzard.

71. As a direct and proximate result of the infringements by Defendants, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial which are not currently ascertainable. Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

72. Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

73. As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Blizzard is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzards' copyrights. Blizzard has no adequate remedy at law. Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

**COUNT V**

**Breach of EULA and ToU**

74. Blizzard realleges each and every allegation set forth in Paragraphs 1 through 73, inclusive, and incorporates them by reference herein.

75. Defendants' actions, as stated above, constitute breach of the EULA and ToU entered into or agreed to by Defendants, in violation of the laws of the States of Delaware and California, by reason of which Blizzard has suffered and will continue to, suffer harm and irreparable injury.

**COUNT VI**

**Intentional Interference with Contractual Relations**

76. Blizzard realleges each and every allegation set forth in Paragraphs 1 through 75, inclusive, and incorporates them by reference herein.

77. As described herein, before playing the game, licensed users of StarCraft II must first assent to the EULA and the ToU, thereby creating contracts between the users and Blizzard. Among other provisions, the EULA provides that the user may not "use cheats, automation software (bots), hacks, or any other unauthorized third-party software designed to modify the Game experience, including without limitation, mods that violate the terms of this License Agreement or the Terms of Use." Likewise, the ToU provides that the user may not, under any circumstances, "use cheats, automation software (bots), hacks, mods, or any other unauthorized third-party software designed to modify the [Battle.net] Service, any Game, or any Game experience."

78. Blizzard's contracts with its users are valid and enforceable.

79. Blizzard is informed and believes, and on that basis avers, that Defendants are aware of the contracts between Blizzard and its users, and additionally are aware of the Blizzard EULA and ToU by virtue of their own personal Battle.net accounts. Defendants specifically are aware that the EULA and

ToU prohibit StarCraft II players from using or providing unauthorized hacks/cheats. Nevertheless, Defendants intentionally induce users of StarCraft II to use the Hacks in breach of StarCraft II users' contracts with Blizzard.

80. By inducing licensed users to breach their contracts with Blizzard, Defendants intentionally interfere with the contracts between Blizzard and licensed users of StarCraft II.

81. Defendants' actions were committed willfully and knowingly. Defendants knowingly induced breaches with an improper motive, namely to profit from "donations" or other fees received from players for the Hacks, which harm the StarCraft II game experience and which Defendants knew Blizzard prohibited.

82. As a result of Defendants' actions, Blizzard has suffered damage in an amount to be proven at trial, including but not limited to loss of goodwill among StarCraft II users, diversion of Blizzard resources to attempt to prevent the development of hacks, loss of revenue from terminated users, and decreased revenue.

83. Defendants' intentional interference with the contracts between Blizzard and its licensed users entitle Blizzard to injunctive relief and compensatory damages, and other available relief.

## PRAYER FOR RELIEF

WHEREFORE, Blizzard prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including but not limited to, an Order:

1. Preliminarily and permanently enjoining Defendants, their officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, and all persons acting in concert or participation with them from: (i) infringing Blizzard's copyrighted works; (ii) inducing or contributing to third party infringements of Blizzard's copyrighted works; (iii) intentionally interfering with

Blizzard's contracts with players; and (iv) violating the StarCraft II EULA and Battle.net ToU.

2. Requiring Defendants to shut down the Hacks and any colorable copy thereof, hosted at any domain, address, location, or ISP within the jurisdiction of this Court.

3. Requiring Defendants to deliver to Blizzard all copies of materials that infringe or violate any of Blizzard's rights described herein.

4. Requiring Defendants to provide Blizzard with an accounting of any and all sales of products or services that infringe or violate any of Blizzard's rights described herein.

5. Awarding Blizzard monetary relief including damages sustained by Blizzard in an amount not yet determined, including actual or statutory damages for copyright infringement and willful copyright infringement under 17 U.S.C. §§ 504, as appropriate.

6. Awarding Blizzard its costs and attorneys' fees in this action pursuant to 17 U.S.C. §§ 505 and other applicable laws.

7. Awarding such other and further relief as this Court may deem just and appropriate.

DATED: October 4, 2010

MITCHELL SILBERBERG & KNUPP LLP
MARC E. MAYER
JILL P. RUBIN

By: ______________________
Marc E. Mayer
Attorneys for Blizzard Entertainment, Inc.

**JURY DEMAND**

Plaintiff Blizzard Entertainment, Inc. ("Blizzard") hereby demands a trial by jury on all matters and issues so triable.

DATED: October 4, 2010

MITCHELL SILBERBERG & KNUPP LLP
MARC E. MAYER
JILL P. RUBIN

By: ______________________
Marc E. Mayer
Attorneys for Blizzard Entertainment, Inc.

**EXHIBIT A**

STARCRAFT® II: WINGS OF LIBERTY™
END USER LICENSE AGREEMENT

IMPORTANT! PLEASE READ CAREFULLY.

*Last Updated March 15, 2010*

THIS SOFTWARE IS LICENSED, NOT SOLD. BY INSTALLING, COPYING OR OTHERWISE USING THE GAME (DEFINED BELOW), YOU AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT. IF YOU DO NOT AGREE TO THE TERMS OF THIS AGREEMENT, YOU ARE NOT PERMITTED TO INSTALL, COPY OR USE THE GAME. IF YOU REJECT THE TERMS OF THIS AGREEMENT WITHIN THIRTY (30) DAYS AFTER YOUR PURCHASE, YOU MAY CALL (800) 757-7707 TO REQUEST A FULL REFUND OF THE PURCHASE PRICE.

The StarCraft® II: Wings of Liberty™ software program, and all files that are delivered to you by Blizzard Entertainment, Inc. (via on-line transmission or otherwise) to "patch," update, or otherwise modify the software program, as well as all printed materials and electronic documentation (the "Manual"), together with any and all copies and derivative works of such software program and Manual (collectively, the "Game") is the copyrighted work of Blizzard Entertainment, Inc. or its licensors (collectively referred to herein as "Blizzard"). Any and all uses of the Game are governed by the terms of this End User License Agreement (the "License Agreement" or "Agreement"). The Game may only be played by obtaining from Blizzard access to Blizzard's Battle.net® game service (the "Service"), which is subject to a separate Terms of Use agreement (the "Terms of Use") available at http://www.battle.net/legal/termsofuse.shtml and incorporated into this Agreement by this reference. Before playing the Game, you must: (i) obtain an authorization code from a 'box' copy of the Game or through the Service; and (ii) register for and login using an authorized account with the Service (the "Account"). The Game is distributed solely for use by authorized end users according to the terms of this License Agreement. Any use, reproduction, modification or distribution of the Game not expressly authorized by the terms of this License Agreement is expressly prohibited.

1. <u>Grant of a Limited Use License</u>. Subject to your agreement to and continuing compliance with this License Agreement, Blizzard hereby grants, and you hereby accept, a limited, non-transferable, non-sublicensable, non-exclusive license to (a) install the Game on one or more computers owned by you or under your legitimate control, (b) use the Game in conjunction with the Service for your noncommercial entertainment purposes only, subject to the terms of Section 2(c) below; and (c) to make and distribute copies of the Game to other potential users free of any charge for use solely on the Service. All use of the Game, or any copy of the Game, is subject to this License Agreement and to the Terms of Use, both of which must be accepted before the Game can be played.

2. <u>Additional License Limitations</u>. The license granted to you in Section 1 above is subject to the limitations set forth in Sections 1 and 2 (collectively, the "License Limitations"). Any use of the Game in violation of the License Limitations will be regarded as an infringement of Blizzard's copyrights in and to the Game. You agree that you will not, under any circumstances:

a. In whole or in part, copy or reproduce (except as provided herein),translate, reverse engineer, derive source code from, modify, disassemble, decompile, or create derivative works based on the Game;

b. Use cheats, automation software (bots), hacks, or any other unauthorized third-party software designed to modify the Game experience, including without limitation, mods that violate the terms of this License Agreement or the Terms of Use;

c. Exploit the Game or any of its parts for any commercial purpose without Blizzard's express permission, with the sole exception that you may use the Game, or copies of the Game, on the Service at a cyber cafe, computer gaming center or any other location based site;

d. Use any unauthorized third-party software that intercepts, "mines", or otherwise collects information from or through the Game or the Service, including without limitation any software that reads areas of RAM used by the Game to store information; provided, however, that Blizzard may, at its sole and absolute discretion, allow the use of certain third party user interfaces;

e. Modify or cause to be modified any files that are a part of the Game in any way not expressly authorized by Blizzard;

f. Host, provide or develop matchmaking services for the Game or intercept, emulate or redirect the communication protocols used by Blizzard in any way, for any purpose, including without limitation unauthorized play over the internet, network play (except as expressly authorized by Blizzard), or as part of content aggregation networks;

g. Facilitate, create or maintain any unauthorized connection to the Game or the Service, including without limitation (a) any connection to any unauthorized server that emulates, or attempts to emulate, the Service; and (b) any connection using third party programs or tools;

h. Attempt to sell, sublicense, rent, lease, grant a security interest in or otherwise transfer any copy of the Game or your rights to the Game to any other party in any way not expressly authorized herein; or

i. Use the Map Editor (defined below) to access or edit anything other than content included in an authorized copy of STARCRAFT® II licensed to you.

3. Map Editor. The Game includes a program that allows you to create custom levels, maps, scenarios or other materials for use in connection with the Game (the "Map Editor"). The following terms are specific to the Map Editor:

a. Map Content. You understand that the content required to create or modify STARCRAFT® II Modified Maps (as defined below) is included in the STARCRAFT® II game client, and that all such content is owned by Blizzard and governed by this Agreement. YOU ACKNOWLEDGE AND AGREE THAT ALL MAPS, LEVELS AND OTHER CONTENT CREATED OR MODIFIED USING

THE MAP EDITOR (COLLECTIVELY, "MODIFIED MAPS") ARE AND SHALL REMAIN THE SOLE AND EXCLUSIVE PROPERTY OF BLIZZARD. WITHOUT LIMITING THE FOREGOING, YOU HEREBY ASSIGN TO BLIZZARD ALL OF YOUR RIGHTS, TITLE AND INTEREST IN AND TO ALL MODIFIED MAPS, AND AGREE THAT YOU WILL EXECUTE FUTURE ASSIGNMENTS PROMPTLY UPON RECEIVING SUCH A REQUEST FROM BLIZZARD.

b. User Content Restrictions. You represent and warrant that neither the content you use to create any Modified Maps, nor the compilation, arrangement or display of such content (collectively, the "User Content"), infringes or will infringe any copyright, trademark, patent, trade secret or other intellectual property right of any third party. You further represent and warrant that you will not use or contribute User Content that is unlawful, tortious, defamatory, obscene, invasive of the privacy of another person, threatening, harassing, abusive, hateful, racist or otherwise objectionable or inappropriate.

4. Service and Terms of Use. The Terms of Use agreement governs all aspects of game play. If you do not agree with the Terms of Use, then (a) you may not register for an Account to play the Game; and (b) you may call 1-800-592-5499 within thirty (30) days after the original purchase and request a full refund of the purchase price. Once you accept the License Agreement and the Terms of Use, you will no longer be eligible for a refund.

5. Ownership. All title, ownership rights and intellectual property rights in and to the Game and all copies thereof (including without limitation any titles, computer code, themes, objects, characters, character names, stories, dialog, catch phrases, locations, concepts, artwork, structural or landscape designs, animations, sounds, musical compositions and recordings, audio-visual effects, storylines, character likenesses, methods of operation, moral rights, and any related documentation) are owned or licensed by Blizzard. The Game is protected by the copyright laws of the United States, international treaties and conventions, and other laws. The Game may contain materials licensed by third parties, and the licensors of those materials may enforce their rights in the event of any violation of this License Agreement. You have no interest, monetary or otherwise, in any feature or content contained in the Game or associated with the Account.

6. Pre-Loaded Software. The media on which the Game is distributed may contain additional software that requires a separate license before it can be used ("Additional Software"). You agree that Blizzard may install this Additional Software on your hard drive as part of the Game installation process. You also agree that you will not access, use, distribute, copy, display, reverse engineer, derive source code from, modify, disassemble, decompile or create derivative works based on this Additional Software until and unless you receive from Blizzard a license to use it along with a valid alphanumeric key with which to activate all or portions of the Additional Software. The terms of the End User License Agreement displayed during the installation or activation of the Additional Software will replace and supersede this Agreement, but only with regard to those portions of the Additional Software for which you receive a license from Blizzard. Notwithstanding anything to the contrary herein, you may make one (1) copy of the Additional Software for archival purposes only.

7. No Transfer or Sublicense. THE GAME IS LICENSED, NOT SOLD. NEITHER THE GAME NOR THE LICENSE GRANTED IN SECTION 1 MAY BE SUBLICENSED OR TRANSFERRED TO ANY OTHER PERSON OR ENTITY, AND ANY ATTEMPT TO DO SO SHALL BE NULL AND VOID. If a court of competent jurisdiction finds the foregoing sentence to be unenforceable, you agree that you will call Blizzard Customer Service at 1-800-592-5499 to arrange for the transfer of your rights under this Agreement to another person with a valid Battle.net account; provided, however, that Blizzard may charge a processing/handling fee to facilitate the transfer, issue a unique key to the transferee, and remove the preexisting key from the Battle.net account registered to you.

8. Consent to Monitor. WHEN RUNNING, THE GAME MAY MONITOR YOUR COMPUTER'S RANDOM ACCESS MEMORY (RAM) FOR UNAUTHORIZED THIRD PARTY PROGRAMS RUNNING CONCURRENTLY WITH THE GAME. AN "UNAUTHORIZED THIRD PARTY PROGRAM" AS USED HEREIN SHALL BE DEFINED AS ANY THIRD PARTY SOFTWARE PROHIBITED BY SECTION 2. IN THE EVENT THAT THE GAME DETECTS AN UNAUTHORIZED THIRD PARTY PROGRAM, THE GAME MAY (a) COMMUNICATE INFORMATION BACK TO BLIZZARD, INCLUDING WITHOUT LIMITATION YOUR ACCOUNT NAME, DETAILS ABOUT THE UNAUTHORIZED THIRD PARTY PROGRAM DETECTED, AND THE TIME AND DATE; AND/OR (b) EXERCISE ANY OR ALL OF ITS RIGHTS UNDER THIS AGREEMENT, WITH OR WITHOUT PRIOR NOTICE TO THE USER.

9. Termination. This License Agreement is effective until terminated. You may terminate this License Agreement at any time by providing notice to Blizzard customer service via email at support@blizzard.com, at which time Blizzard will remove your license to use the Game from the Account. Blizzard may terminate this Agreement at any time for any reason or no reason. Upon termination, all licenses granted herein shall immediately terminate and you must promptly remove the Game from your hard drive.

10. Export Controls. The Game may not be re-exported, downloaded or otherwise exported into (or to a national or resident of) any country to which the U.S. has embargoed goods, or to anyone on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Commerce Department's Table of Denial Orders. You represent and warrant that you are not located in, under the control of, or a national or resident of any such country or on any such list.

11. Patches and Updates. Blizzard may deploy or provide patches, updates and modifications to the Game that must be installed for you to continue to play the Game. Blizzard may update the Game remotely, including without limitation the Game residing on your machine, without your knowledge, and you hereby grant to Blizzard your consent to deploy and apply such patches, updates and modifications.

12. Duration of the "On-line" Component. The Game is capable of both offline and online player modes, both of which require that you obtain authorized access to the Service. You understand and agree that the Service is provided by Blizzard at its discretion and may be terminated or otherwise discontinued by Blizzard pursuant to the Terms of Use.

13. Limited Warranty. THE GAME IS PROVIDED "AS IS" WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTIES OF CONDITION, UNINTERRUPTED USE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NONINFRINGEMENT. The entire risk arising out of use or performance of the Game remains with the user. Notwithstanding the foregoing, Blizzard warrants up to and including ninety (90) days from the date of your purchase of the Game that the media on which the Game was distributed shall be free from defects in material and workmanship. In the event that such media proves to be defective during that time period, and upon presentation to Blizzard of proof of purchase of the defective media, Blizzard will at its option (a) correct any defect, (b) provide you with a similar product of similar value, or (c) refund your money. THE FOREGOING IS YOUR SOLE AND EXCLUSIVE REMEDY FOR THE EXPRESS WARRANTY SET FORTH IN THIS SECTION. Some states do not allow the exclusion or limitation of implied warranties, so the above limitations may not apply to you.

14. Limitation of Liability, Indemnity. NEITHER BLIZZARD NOR ITS PARENT, SUBSIDIARIES OR AFFILIATES SHALL BE LIABLE IN ANY WAY FOR ANY LOSS OR DAMAGE OF ANY KIND ARISING OUT OF THE GAME OR ANY USE OF THE GAME, INCLUDING WITHOUT LIMITATION LOSS OF DATA, LOSS OF GOODWILL, WORK STOPPAGE, COMPUTER FAILURE OR MALFUNCTION, OR ANY AND ALL OTHER DAMAGES OR LOSSES. NEITHER BLIZZARD NOR ITS PARENT, SUBSIDIARIES OR AFFILIATES SHALL BE LIABLE IN ANY WAY FOR ANY LOSS OR DAMAGE TO ACCOUNTS, STATISTICS, OR USER STANDINGS, RANKS, OR PROFILE INFORMATION STORED BY THE GAME AND/OR THE SERVICE. BLIZZARD SHALL NOT BE RESPONSIBLE FOR ANY INTERRUPTIONS OF SERVICE, INCLUDING WITHOUT LIMITATION ISP DISRUPTIONS, SOFTWARE OR HARDWARE FAILURES, OR ANY OTHER EVENT WHICH MAY RESULT IN A LOSS OF DATA OR DISRUPTION OF SERVICE. IN NO EVENT WILL BLIZZARD BE LIABLE TO YOU FOR ANY INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES. In no event shall Blizzard's liability, whether arising in contract, tort, strict liability or otherwise, exceed (in the aggregate) the total fees paid by you to Blizzard during the six (6) months immediately prior to the time such claim arose. You hereby agree to defend, indemnify and hold Blizzard harmless from and against any claim, liability, loss, injury, damage, cost or expense (including reasonable attorneys' fees) incurred by Blizzard arising out of or from (a) your use of the Game; (b) your violation of any provision of this Agreement (including without limitation any violation of the representations and warranties set forth in Section 3(b)); and/or (c) your creation, distribution or use of Modified Maps or other content created or edited using the Map Editor. Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitations may not apply to you.

15. Equitable Remedies. You hereby agree that Blizzard would be irreparably damaged if the terms of this License Agreement were not specifically enforced, and therefore you agree that Blizzard shall be entitled, without bond, other security, or proof of damages, to appropriate equitable remedies with respect to breaches of this License Agreement, in addition to such other remedies as Blizzard may otherwise have available to it under applicable laws. In the event any litigation is brought by either party in connection with this License Agreement, the prevailing

party in such litigation shall be entitled to recover from the other party all the costs, attorneys' fees and other expenses incurred by such prevailing party in the litigation.

16. Changes to the Agreement and/or Game. Blizzard may replace this Agreement with new versions (each a "New EULA") over time as the Game and the law evolve. This Agreement will terminate immediately upon the introduction of a New EULA, and you will be given an opportunity to review and accept the New EULA. If you accept the New EULA, and if the Account registered to you remains in good standing, you will be able to continue playing the Game subject to the terms of the New EULA. If you decline to accept the New EULA, or if you cannot comply with the terms of the New EULA for any reason, you will no longer be permitted to play the Game. New EULAs will not be applied retroactively. Blizzard may change, modify, suspend, or discontinue any aspect of the Game at any time. Blizzard may also impose limits on certain features or restrict your access to parts or all of the Game without notice or liability.

17. Dispute Resolution and Governing Law.

a. Informal Negotiations. To expedite resolution and control the cost of any dispute, controversy or claim related to this License Agreement ("Dispute"), you and Blizzard agree to first attempt to negotiate any Dispute (except those Disputes expressly provided below) informally for at least thirty (30) days before initiating any arbitration or court proceeding. Such informal negotiations commence upon written notice from one person to the other. Blizzard will send its notice to your billing address and email you a copy to the email address you have provided to us. You will send your notice to Blizzard Entertainment, Inc., P.O. Box 18979, Irvine CA 92623, attn: Legal Department.

b. Binding Arbitration. If you and Blizzard are unable to resolve a Dispute through informal negotiations, either you or Blizzard may elect to have the Dispute (except those Disputes expressly excluded below) finally and exclusively resolved by binding arbitration. Any election to arbitrate by one party shall be final and binding on the other. YOU UNDERSTAND THAT ABSENT THIS PROVISION, YOU WOULD HAVE THE RIGHT TO SUE IN COURT AND HAVE A JURY TRIAL. The arbitration shall be commenced and conducted under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") and, where appropriate, the AAAs Supplementary Procedures for Consumer Related Disputes ("AAA Consumer Rules"), both of which are available that the AAA website www.adr.org. The determination of whether a Dispute is subject to arbitration shall be governed by the Federal Arbitration Act and determined by a court rather than an arbitrator. Your arbitration fees and your share of arbitrator compensation shall be governed by the AAA Rules and, where appropriate, limited by the AAA Consumer Rules. If such costs are determined by the arbitrator to be excessive, Blizzard will pay all arbitration fees and expenses. The arbitration may be conducted in person, through the submission of documents, by phone or online. The arbitrator will make a decision in writing, but need not provide a statement of reasons unless requested by a party. The arbitrator must follow applicable law, and any award may be challenged if the arbitrator fails to do so. Except as otherwise provided in this License Agreement, you and Blizzard may litigate in court to compel arbitration, stay proceeding pending

arbitration, or to confirm, modify, vacate or enter judgment on the award entered by the arbitrator.

c. Restrictions. You and Blizzard agree that any arbitration shall be limited to the Dispute between Blizzard and you individually. To the full extent permitted by law, (1) no arbitration shall be joined with any other; (2) there is no right or authority for any Dispute to be arbitrated on a class-action basis or to utilize class action procedures; and (3) there is no right or authority for any Dispute to be brought in a purported representative capacity on behalf of the general public or any other persons.

d. Exceptions to Informal Negotiations and Arbitration. You and Blizzard agree that the following Disputes are not subject to the above provisions concerning informal negotiations and binding arbitration: (1) any Disputes seeking to enforce or protect, or concerning the validity of, any of your or Blizzard's intellectual property rights; (2) any Dispute related to, or arising from, allegations of theft, piracy, invasion of privacy or unauthorized use; and (3) any claim for injunctive relief.

e. Location. If you are a resident of the United States, any arbitration will take place at any reasonable location convenient for you. For residents outside the United States, any arbitration shall be initiated in the County of Los Angeles, State of California, United States of America. Any Dispute not subject to arbitration (other than claims proceeding in any small claims court), or where no election to arbitrate has been made, shall be decided by a court of competent jurisdiction within the County of Los Angeles, State of California, United States of America, and you and Blizzard agree to submit to the personal jurisdiction of that court.

18. Governing Law. Except as otherwise set forth herein, this License Agreement shall be governed by, and will be construed under, the Laws of the United States of America and the law of the State of Delaware, without regard to choice of law principles. The application of the United Nations Convention on Contracts for the International Sale of Goods is expressly excluded. For our customers who purchased a license to the Game in, and are a resident of Canada, other laws may apply if you choose not to agree to arbitrate as set forth above; provided, however, that such laws shall affect this Agreement only to the extent required by such jurisdiction. In such a case, this Agreement shall be interpreted to give maximum effect to the terms and conditions hereof. Those who choose to access the Service from locations outside of the United States and Canada do so on their own initiative and are responsible for compliance with local laws if and to the extent local laws are applicable

19. Severability. You and Blizzard agree that if any portion of Section 17 is found illegal or unenforceable (except any portion of 17(d)) that portion shall be severed and the remainder of the Section shall be given full force and effect. If Section 17(d) is found to be illegal or unenforceable then neither you nor Blizzard will elect to arbitrate any Dispute falling within that portion of Section 17(d) found to be illegal or unenforceable and such Dispute shall be decided by a court of competent jurisdiction within the County of Los Angeles, State of California, United States of America, and you and Blizzard agree to submit to the personal jurisdiction of that court.

20. Miscellaneous. This License Agreement constitutes and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements, provided, however, that this Agreement shall coexist with, and shall not supersede, the Terms of Use. To the extent that the provisions of this Agreement conflict with the provisions of the Terms of Use, the conflicting provisions in the Terms of Use shall govern. The provisions of Sections 2-7, 10 and 12-20 shall survive the termination of this Agreement for any reason. If any provision of this Agreement is found to be unenforceable, that provision shall be severed and the remainder of the Agreement shall be given full force and effect.

I hereby acknowledge that I have read and understand the foregoing License Agreement and agree that by clicking "Accept" or installing the Game I am acknowledging my agreement to be bound by the terms and conditions of this License Agreement.

**EXHIBIT B**

Search Blizzard.com



BATTLE NET TERMS OF USE

LAST REVISED 5-26-10

# YOU SHOULD CAREFULLY READ THE FOLLOWING TERMS OF USE AGREEMENT.

Thank you for using the Battle.net service (the "Service"). These Terms of Use (the "TOU" or "Agreement") set forth the terms and conditions under which you are provided access to the Service by Blizzard Entertainment, Inc. ("Blizzard" or "we"). This Agreement does not supersede the End User License Agreement (the "EULA") that accompanies Blizzard's games (each a "Game") or any other Game-specific Terms of Use. The EULA governs your use of the Game client – that part of any Game installed on your computer – and this Agreement governs your use of the Service.

1. **Grant of a Limited License to Use the Service.**
   Subject to your agreement to and continuing compliance with the Terms of Use agreement, you may use the Service solely for your own non-commercial entertainment purposes by accessing it with a web browser or an authorized, unmodified Game client. You may not use the Service for any other purpose, or using any other method.

2. **Additional License Limitations.**
   The license granted to you in Section 1 is subject to the limitations set forth in Sections 1 and 2 (collectively, the "License Limitations"). Any use of the Service or any Game in violation of the License Limitations will be regarded as an infringement of Blizzard's copyrights in and to the Service and/or Game. You agree that you will not, under any circumstances:

   A. use cheats, automation software (bots), hacks, mods or any other unauthorized third-party software designed to modify the Service, any Game or any Game experience;

   B. exploit the Service, a Game or any part thereof for any commercial purpose, including without limitation (a) use at a cyber cafe, computer gaming center or any other commercial establishment without the express written consent of Blizzard; (b) to communicate or facilitate any commercial advertisement or solicitation; (c) for gathering in-game currency, items or resources for sale outside the Game without Blizzard's authorization; or (d) performing in-game services in exchange for payment outside the Game, e.g., power-leveling;

   C. use the Service for any "e-sports" or group competition sponsored, promoted or facilitated by any commercial or non-profit entity without Blizzard's prior written consent;

   D. use any unauthorized third-party software that intercepts, "mines", or otherwise collects information from or through any Game or the Service, including without limitation any software that reads areas of RAM used by any Game or the Service to store information about a character or a Game environment; provided, however, that Blizzard may, at its sole and absolute discretion, allow the use of certain third party user interfaces;

   E. modify or cause to be modified any files that are a part of any Game or the Service in any way not expressly authorized by Blizzard;

F. host, provide or develop matchmaking services for any Game or the Service, or intercept, emulate or redirect the communication protocols used by Blizzard in any way, for any purpose, including without limitation unauthorized play over the internet, network play, or as part of content aggregation networks;

G. facilitate, create or maintain any unauthorized connection to any Game or the Service, including without limitation (a) any connection to any unauthorized server that emulates, or attempts to emulate, the Service or any Game; and (b) any connection using programs or tools not expressly approved by Blizzard; or

H. disrupt or assist in the disruption of (i) any computer used to support the Service or any Game environment (each a "Server"); or (ii) any other player's Game experience. ANY ATTEMPT BY YOU TO DISRUPT THE SERVICE OR UNDERMINE THE LEGITIMATE OPERATION OF ANY GAME MAY BE A VIOLATION OF CRIMINAL AND CIVIL LAWS.

3. **Requirements.**

Before you can use the Service, you must: (i) read, understand and agree to this TOU, the Privacy Policy, the In Game Policies, and (ii) register an account on the Service (an "Account"). If you want to play a game on the Service, you must additionally read, understand and agree to the In Game Policies located here, and the applicable Game-specific Terms of Use and EULA for each of the Game(s) you will use with the Service; and (ii) purchase a valid license to use the Game(s) you will use with the Service. You are responsible for any internet connection fees that you incur when accessing the Service.

4. **Use of the Service by Minors.**

Subject to the laws of your country of residence, minor children may utilize an Account established by their parent or legal guardian with the approval of their parent or legal guardian. In the event that you permit your minor child or legal ward (collectively, your "child") to use an Account on the Service, you hereby agree to this Terms of Use Agreement on behalf of yourself and your child, and you understand and agree that you will be responsible for all uses of the Account by your child whether or not such uses were authorized by you, including, but not limited to, your minor child's acceptance of the EULA Games that are playable on the Service, or any Game-Specific Terms of Use.

5. **Accessing the Service.**

A. **Account Eligibility.**

You may establish an Account only if you are a "natural person" and an adult in your country of residence. Corporations, Limited Liability Companies, partnerships and other legal or business entities may not establish an Account. Individuals prohibited by Blizzard from using the Service may not create or use an Account, and doing so and may result in severe civil and criminal penalties. By accepting this Agreement, you hereby represent and warrant that you meet these eligibility requirements.

B. **Establishing an Account.**

When creating or updating an Account on the Service, you are required to provide Blizzard with certain personal information such as your name, address, phone number, email address and, in some cases, payment information. An unused Authentication Key provided to you by Blizzard will be required when adding a Game license to an Account. A Game license must be added to an Account before you can play that Game online, where applicable. You agree that you will supply accurate and complete information to Blizzard when requested, and that you will update that information promptly after it changes.

C. **Username and Password.**

During the Account creation process, you may be required to select a unique username and/or a password (collectively referred to hereunder as "Login Information"), and you may not share the Account or the Login Information with anyone other than as expressly set forth herein. You are responsible for maintaining the confidentiality of the Login Information, and you will be responsible for all uses of the Login Information, including purchases, whether or not authorized by you. In the event you become aware of or reasonably suspect any breach of security, including without limitation any loss, theft, or unauthorized disclosure of the Login Information, you must immediately notify Blizzard by emailing wowaccountadmin@blizzard.com.

6. **Account Suspension/Cancelation.**

BLIZZARD MAY SUSPEND, TERMINATE, MODIFY, OR DELETE ACCOUNTS AT ANY TIME FOR ANY REASON OR FOR NO REASON, WITH OR WITHOUT NOTICE TO YOU. Accounts terminated by Blizzard for any type of abuse, including without limitation a violation of these Terms of Use, will not be reactivated for any reason. For purposes of explanation and not limitation, most account suspensions, terminations and/or deletions are the result of violations of this TOU, a Game EULA or other Blizzard policy. You may cancel any Account registered to you at any time by following the instructions on the Website. Blizzard may stop offering and/or supporting the Service at any time.

7. **The Blizzard Online Store.**

A. **Use of the Blizzard Online Store.**

The Blizzard Online Store, available through the Service, may offer (a) downloadable versions of Games that have been enabled for use on the Service ("Enabled Products"); (b) physical copies of the Enabled Products ("Box Product(s)"); and other goods or services ("Merchandise"). All purchases made through the Service are also subject to the terms and conditions of this Agreement.

B. **Blizzard Online Store.**

To use the Blizzard Online Store, you will be required to provide Blizzard with certain personal information that will be associated with the Account. For details regarding the protection of your data, see the Privacy Policy.

C. **Terms of Sale.**

Please visit the Blizzard Terms of Sale, hereby incorporated herein by this reference, for additional terms and conditions applicable to your purchase of goods and services through the Blizzard Store.

8. **Updates.**

A. **Agreements.**

Blizzard will update this Agreement as the Service and law evolves with new versions (each a "New TOU"). This Agreement will terminate immediately upon the introduction of a New TOU, and you will be given an opportunity to review and accept the New TOU. If you accept the New TOU, and if the Account registered to you remains in good standing, you will be able to continue using the Account subject to the terms of the New TOU. If you decline to accept the New TOU, or if you cannot comply with the terms of the New TOU for any reason, you will no longer be permitted to use the Account. Blizzard may change, modify, suspend, or discontinue any aspect of the Service at any time. Blizzard may also impose limits on certain features or restrict your access to parts or all of the Service without notice or liability. You have no interest, monetary or otherwise, in any feature or content contained in the Service or associated with the Account. Blizzard may also revise other policies, including without limitation the Code of Conduct and other In Game Policies and the Privacy Policy, at any time, and the new versions will be available on the Website. If at any point you do not agree to any portion of the then-current version of this Agreement, the Code of Conduct the Privacy Policy, or any other Blizzard policy or agreement relating to your use of the Service, you must immediately stop using the Service.

B. **Software and Services.**

In an effort to improve its products and services, Blizzard may require that you download and install updates to the Service and to the Games you have installed on your computer. You acknowledge and agree that Blizzard may update the Service and the Games, including the Game client(s) on your computer, with or without notifying you.

9. **Ownership.**

A. **Game clients and Service.**

The Game clients and the Service (including without limitation any titles, computer code, themes, objects, characters, character names, stories, dialogue, catch phrases, concepts, artwork, animations, sounds, musical compositions, audio-visual effects, methods of operation, moral rights, documentation, in-game chat transcripts, character profile information, recordings or replays of Games, and the Game client and server software) are copyrighted works owned by Blizzard and its licensors. Blizzard reserves all rights in connection with the Games and the Service, including without limitation the exclusive right to create derivative works. You agree that you will not create any work based on the Games or the Service except as expressly set forth by Blizzard in contest rules, or in Blizzard's Fan Policies, which include without limitation Blizzard's Machinima Policy and Fan Art Submission Policy. Any reproduction or redistribution of any Game not in accordance with any policy or agreement, including without limitation the Game EULA and the TOU, is expressly prohibited by law, and may result in severe civil and criminal penalties.

B. **Account.**

NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, YOU ACKNOWLEDGE AND AGREE THAT YOU SHALL HAVE NO OWNERSHIP OR OTHER PROPERTY INTEREST IN THE ACCOUNT, AND YOU FURTHER ACKNOWLEDGE AND AGREE THAT ALL RIGHTS IN AND TO THE ACCOUNT ARE AND SHALL FOREVER BE OWNED BY AND INURE TO THE BENEFIT OF BLIZZARD. Blizzard does not recognize the transfer of Accounts. You may not purchase, sell, gift or trade any Account, or offer to purchase, sell, gift, or trade any Account, and any such attempt shall be null and void.

C. **Virtual Items.**

Blizzard owns, has licensed, or otherwise has rights to all of the content that appears in the Service or the Games. You agree that you have no right or title in or to any such content, including without limitation the virtual goods or currency appearing or originating in any Game, or any other attributes associated with the Account or stored on the Service. Blizzard does not recognize any purported transfers of virtual property executed outside of a Game, or the purported sale, gift or trade in the "real world" of anything that appears or originates in a Game, unless otherwise expressly authorized by Blizzard in writing. Accordingly, you may not sell in-game items or currency for "real" money, or exchange those items or currency for value outside of a Game, without Blizzard's written permission.

10. **Fees.**

You agree to pay all fees and applicable taxes incurred by you or anyone using an Account registered to you. If you choose a recurring subscription for any Game, you

acknowledge that payments will be processed automatically (e.g., debited from your account or charged to your credit card) until you cancel the subscription or the Account. Blizzard may revise the pricing for the goods and services offered through the Service, including without limitation subscription plans for any Game, at any time. YOU ACKNOWLEDGE THAT BLIZZARD IS NOT REQUIRED TO PROVIDE A REFUND FOR ANY REASON, AND THAT YOU WILL NOT RECEIVE MONEY BACK FOR PREPAID TIME WHEN THE ACCOUNT IS CLOSED, WHETHER SUCH CLOSURE WAS VOLUNTARY OR INVOLUNTARY.

11. **Game Transfers.**

The Authentication Key that accompanies most Game clients can only be used once, and will connect a Game license to the Account under which it is registered. The transferability of your license to a Game client is governed by the Game EULA; provided, however, that any transfer of the Game client shall have no impact on the Account registered to you, and that Account shall not transfer with the Game client. Purchasers of a license to a used Game client must follow the process detailed on the www.Blizzard.com website, which may require payment of a processing fee.

12. **RESTRICTIONS AND CONDITIONS OF USE**

A. **No Violation of Laws.**

You agree that you will not, in connection with your use of a Game client or the Service, violate any applicable law or regulation. Without limiting the foregoing, you agree that you will not make available through the Service any material or information that infringes any copyright, trademark, patent, trade secret, or other right of any party (including rights of privacy or publicity).

B. **Misuse of Service.**

You may not connect to or use the Service in any way not expressly permitted by this Agreement. Without limiting the foregoing, you agree that you will not (a) institute, assist, or become involved in any type of attack, including without limitation denial of service attacks, upon the Service or otherwise attempt to disrupt the Service or any other person's use of the Service; or (b) attempt to gain unauthorized access to the Service, Accounts registered to other players, or the computer systems or networks connected to the Service.

C. **No Data Mining.**

You agree that you will not (a) obtain or attempt to obtain any information from the Service or any Game using any method not expressly permitted by Blizzard; (b) intercept, examine or otherwise observe any proprietary communications protocol used by a client or the Service, whether through the use of a network analyzer, packet sniffer or other device; (c) use any third-party software to collect information from or through a Game client or the Service, including without limitation information about your character, any Account registered to you, virtual items, other players, or other Game data.

D. **User Content.**

"User Content" means any communications, images, sounds, and all the material and information that you upload or transmit through a Game client or the Service, or that other users upload or transmit, including without limitation any chat text. You hereby grant Blizzard a perpetual, irrevocable, worldwide, paid-up, non-exclusive, license, including the right to sublicense to third parties, and right to reproduce, fix, adapt, modify, translate, reformat, create derivative works from, manufacture, introduce into circulation, publish, distribute, sell, license, sublicense, transfer, rent, lease, transmit, publicly display, publicly perform, or provide access to electronically, broadcast, communicate to the public by telecommunication, display, perform, enter into computer memory, and use and practice such User Content as well as all modified and derivative works thereof. To the extent permitted by applicable laws, you hereby waive any moral rights you may have in any User Content.

E. **Content Screening and Disclosure.**

We do not, and cannot, pre-screen or monitor all User Content. However, our representatives may monitor and/or record your communications (including without limitation chat text) when you are using the Service or playing a Game, and you hereby provide your irrevocable consent to such monitoring and recording. You acknowledge and agree that you have no expectation of privacy concerning the transmission of any User Content, including without limitation chat text or voice communications. We do not assume any responsibility or liability for User Content that is generated by users. We have the right, but not the obligation, in our sole discretion to edit, refuse to post, or remove any User Content. WE ALSO RESERVE THE RIGHT, AT ALL TIMES AND IN OUR SOLE DISCRETION, TO DISCLOSE ANY USER CONTENT AND OTHER INFORMATION (INCLUDING WITHOUT LIMITATION CHAT TEXT, VOICE COMMUNICATIONS, IP ADDRESSES, AND YOUR PERSONAL INFORMATION) FOR ANY REASON, including without limitation (a) to satisfy any applicable law, regulation, legal process or governmental request; (b) to enforce the terms of this or any other agreement or Blizzard policy; (c) to protect our legal rights and remedies; (d) where we feel someone's health or safety may be threatened; or (e) to report a crime or other offensive behavior.

F. **Real Life Friends Feature and Identity Disclosure.**

The Service allows you to disclose your identity to other users of the Service through the "Real Life Friends" feature. If you use the Real Life Friends feature and opt-in to a request to be "Real Life Friends" with another user, that user will be able to see your real name. Certain features, such as the Battle.net Voice Chat Client, are only available between users of the Service who have opted in to the Real Life Friends feature. IF YOU OPT-IN TO THE REAL LIFE FRIENDS FEATURE, THOSE PEOPLE YOU DESIGNATE AS "REAL LIFE FRIENDS" WILL BE ABLE TO SEE THE NAMES OF YOUR OTHER "REAL LIFE FRIENDS," AND YOUR NAME WILL BE VISIBLE BY THOSE PEOPLE THAT YOUR "REAL LIFE FRIENDS" HAVE DESIGNATED USING THE SAME FEATURE. You may opt out of the Real Life Friends feature at any time by deleting all Real Life Friends from your Battle.net Account.

13. **DISCLAIMER OF WARRANTIES.**

THE SERVICE IS PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS FOR YOUR USE, WITHOUT WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, NON-INFRINGEMENT, AND THOSE ARISING FROM COURSE OF DEALING OR USAGE OF TRADE. BLIZZARD DOES NOT WARRANT THAT YOU WILL BE ABLE TO ACCESS OR USE THE SERVICE AT THE TIMES OR LOCATIONS OF YOUR CHOOSING; THAT THE SERVICE WILL BE UNINTERRUPTED OR ERROR-FREE; THAT DEFECTS WILL BE CORRECTED; OR THAT THE GAME CLIENT OR THE SERVICE ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS.

14. LIMITATION OF LIABILITY; SOLE AND EXCLUSIVE REMEDY; INDEMNIFICATION

A. BLIZZARD IS NOT RESPONSIBLE FOR DAMAGES ARISING OUT OF YOUR USE OF THE SERVICE OR YOUR INABILITY TO USE THE SERVICE. IN NO CASE SHALL BLIZZARD BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, PUNITIVE OR CONSEQUENTIAL DAMAGES ARISING FROM YOUR USE OF THE SERVICE, ANY GAME OR ANY GAME CLIENT. IN NO CASE SHALL THE LIABILITY OF BLIZZARD EXCEED THE AMOUNT THAT YOU PAID TO US DURING THE SIX (6) MONTHS PRIOR TO THE TIME YOUR CAUSE OF ACTION AROSE. Because some states or jurisdictions do not allow the exclusion or the limitation of liability for consequential or incidental damages, in such states or jurisdictions, the liability of Blizzard and its affiliates shall be limited to the fullest extent permitted by law.

B. YOU ACKNOWLEDGE AND AGREE THAT YOUR SOLE AND EXCLUSIVE REMEDY FOR ANY DISPUTE WITH BLIZZARD IS TO STOP USING THE SERVICE, AND TO CANCEL ALL ACCOUNTS REGISTERED TO YOU.

C. You agree to indemnify, defend and hold Blizzard harmless from any claim, demand, damages or other losses, including reasonable attorneys' fees, asserted by any third-party resulting from or arising out of your use of the Service or any Game, or any breach by you of this Agreement, the Code of Conduct or any Game EULA.

15. **DISPUTE RESOLUTION AND GOVERNING LAW.**

A. Disputes can be expensive and time consuming for both parties. In an effort to accelerate resolution and reduce the cost of any dispute, controversy or claim related to these Terms of Use ("Dispute"), you and Blizzard agree to first attempt to negotiate any Dispute (except those Disputes expressly provided below) informally for at least thirty (30) days before initiating any arbitration or court proceeding. Negotiations will begin upon written notice. Blizzard will send its notice to your billing address and email you a copy to the email address you have provided to us. You will send your notice to Blizzard at Blizzard Entertainment, 16215 Alton Parkway, Irvine, CA 92618, Attn: Legal Department.

B. **Binding Arbitration.**

If the parties are unable to resolve a Dispute through negotiations, either you or Blizzard may elect to have the Dispute (with the exception of those Disputes expressly excluded below) finally and exclusively resolved by binding arbitration. Any election to arbitrate by one party shall be final and binding on the other. YOU UNDERSTAND THAT ABSENT THIS PROVISION, YOU WOULD HAVE THE RIGHT TO SUE IN COURT AND HAVE A JURY TRIAL. The arbitration shall be commenced and conducted under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") and, where appropriate, the AAA's Supplementary Procedures for Consumer Related Disputes ("AAA Consumer Rules"), both of which are available that the AAA website www.adr.org. The determination of whether a Dispute is subject to arbitration shall be governed by the Federal Arbitration Act and determined by a court rather than an arbitrator. Your arbitration fees and your share of arbitrator compensation shall be governed by the AAA Rules and, where appropriate, limited by the AAA Consumer Rules. If the arbitrator determines those costs to be excessive, Blizzard will pay all arbitration fees and expenses. The arbitration may be conducted in person, through the submission of documents, by phone or online. The arbitrator will make a decision in writing, but need not provide a statement of reasons unless requested by a party. The arbitrator must follow applicable law, and any award may be challenged if the arbitrator fails to do so. Except as otherwise provided in this Agreement, you and Blizzard may litigate in court to compel arbitration, stay proceeding pending arbitration, or to confirm, modify, vacate or enter judgment on the award entered by the arbitrator.

C. **Restrictions.**

You and Blizzard agree that any arbitration shall be limited to the Dispute between Blizzard and you individually. YOU ACKNOWLEDGE AND AGREE THAT (1) NO ARBITRATION SHALL BE JOINED WITH ANY OTHER; (2) THERE IS NO RIGHT OR AUTHORITY FOR ANY DISPUTE TO BE ARBITRATED ON A CLASS-ACTION BASIS OR TO UTILIZE CLASS ACTION PROCEDURES; AND (3) THERE IS NO RIGHT OR AUTHORITY FOR ANY DISPUTE TO BE BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC OR ANY OTHER PERSONS.

D. **Exceptions to Negotiations and Arbitration.**

You and Blizzard agree that the following Disputes are not subject to the above provisions concerning negotiations and binding arbitration: (1) any Disputes seeking to enforce or protect, or concerning the validity of, any of your or Blizzard's intellectual property rights; (2) any Dispute related to, or arising from, allegations of theft, piracy, invasion of privacy or unauthorized use; and (3) any claim for injunctive relief.

E. If you are a resident of the United States, any arbitration will take place at any reasonable location within the United States convenient for you. For residents

outside the United States, any arbitration shall be initiated in the County of Los Angeles, State of California, United States of America. Any Dispute not subject to arbitration (other than claims proceeding in any small claims court), or where no election to arbitrate has been made, shall be decided by a court of competent jurisdiction within the County of Los Angeles, State of California, United States of America, and you and Blizzard agree to submit to the personal jurisdiction of that court.

F. **Governing Law.**

Except as expressly provided otherwise, this Agreement shall be is governed by, and will be construed under, the Laws of the United States of America and the law of the State of Delaware, without regard to choice of law principles. The application of the United Nations Convention on Contracts for the International Sale of Goods is expressly excluded. For our customers who access the Service from Canada, Chile, Mexico, Argentina, Australia, Singapore, Thailand, or New Zealand, other laws may apply if you choose not to agree to arbitrate as set forth above, and in such an event, shall affect this Agreement only to the extent required by such jurisdiction. In such a case, this Agreement shall be interpreted to give maximum effect to the terms and conditions hereof. If you access the Service from New Zealand, and are a resident of New Zealand, The New Zealand Consumer Guarantees Act of 1993 ("Act") may apply to the Game and/or the Service as supplied by Blizzard to you. If the Act applies, then notwithstanding any other provision in this Agreement, you may have rights or remedies as set out in the Act which may apply in addition to, or, to the extent that they are inconsistent, instead of, the rights or remedies set out in this Agreement. Those who choose to access the Service from locations outside of the United States, Canada, Australia, Singapore, or New Zealand do so on their own initiative contrary to the terms of this Agreement, and are responsible for compliance with local laws if and to the extent local laws are applicable.

G. **Severability.**

You and Blizzard agree that if any portion of this Section 14 is found illegal or unenforceable (except any portion of Section 14C above), that portion shall be severed and the remainder of the Section shall be given full force and effect. If this Section 14 is found to be illegal or unenforceable then neither you nor Blizzard will elect to arbitrate any Dispute falling within that portion of this Section 14 to be illegal or unenforceable and such Dispute shall be decided by a court of competent jurisdiction within the County of Los Angeles, State of California, United States of America, and you and Blizzard agree to submit to the personal jurisdiction of that court.

16. **DISCLOSURES; THIRD PARTY FEATURES.**

A. **Massive.**

Blizzard's Games and the Service may incorporate technology of Massive Incorporated ("Massive"), a wholly-owned subsidiary of Microsoft Corporation ("Microsoft"), that enables in-game advertising, and the display of other similar in-game objects, which are downloaded temporarily to your personal computer and replaced during online game play. As part of this process, Massive may collect some information about the game and the advertisements delivered to you, as well as standard information that is sent when your personal computer or game console connects to the Internet including your Internet protocol (IP) address. Massive will use this information to transmit and measure in-game advertising, as well as to improve the products and services of Massive and its affiliates. None of the information collected by Massive will be used to identify you. For additional details regarding Massive's in-game advertising practices, please see Massive's In-Game Advertising privacy statement at http://go.microsoft.com/fwlink/?LinkId=122085&clcid=0x409. The trademarks and copyrighted material contained in all in-game advertising are the property of the respective owners. Portions of the Service are © 2008 Massive Incorporated. All rights reserved.

B. **Facebook.**

If you are a registered user of Facebook you may use your Facebook data to enable you to find your Facebook friends on the Service. Your Facebook account is subject to separate terms and conditions provided by Facebook. Note that if you have a Facebook account, your Facebook friends will be able to associate your screen name with your real name on the Service when they use the Facebook friends feature. You hereby acknowledge that Facebook is not responsible for any liability as a result of your use of the Service.

17. **GENERAL**

A. **TOU Revisions.**

The TOU may only be revised in a writing signed by Blizzard or published by Blizzard on its website.

B. **Assignment.**

Blizzard may assign this Agreement, in whole or in part, to any person or entity at any time with or without your consent. You may not assign the TOU without Blizzard's prior written consent, and any unauthorized assignment by you shall be null and void.

C. **Severability.**

If any part of this Agreement is determined to be invalid or unenforceable, then that portion shall be severed, and the remainder of the Agreement shall be given full force and effect.

D. **Attorneys' Fees.**

In the event any litigation is brought by either party in connection with the TOU, the prevailing party in such litigation shall be entitled to recover from the other party all the reasonable costs, attorneys' fees and other expenses incurred by such prevailing party in the litigation.

E. **Entire Agreement.**

This TOU, including the documents expressly incorporated by reference herein, constitutes the entire agreement between you and us with respect to the Service and supersedes all prior or contemporaneous communications, whether electronic, oral or written, between you and us with respect to the Service; provided, however, that this Agreement shall coexist with, and shall not supersede, Game EULAs and Terms of Use specific to a Blizzard Game.

F. **No Waiver.**

Our failure to enforce any provision of the TOU shall in no way be construed to be a present or future waiver of such provision, nor in any way affect the right of any party to enforce each and every such provision thereafter. The express waiver by us of any provision, condition or requirement of the TOU shall not constitute a waiver of any future obligation to comply with such provision, condition or requirement.

G. **Notices.**

All notices given by you or required under the TOU shall be in writing and addressed to: Blizzard Entertainment, 16215 Alton Parkway, Irvine, CA 92618, Attn: Legal Department.

H. **Equitable Remedies.**

You hereby agree that Blizzard would be irreparably damaged if the terms of this Agreement were not specifically enforced, and therefore you agree that we shall be entitled, without bond, other security, or proof of damages, to appropriate equitable remedies with respect to breaches of the TOU, in addition to such other remedies as we may otherwise have available to us under applicable laws.

I. **Force Majeure.**

Blizzard shall not be liable for any delay or failure to perform resulting from causes outside the reasonable control of Blizzard, including without limitation any failure to perform hereunder due to unforeseen circumstances or cause beyond Blizzard's control such as acts of God, war, terrorism, riots, embargoes, acts of civil or military authorities, fire, floods, accidents, strikes, or shortages of transportation facilities, fuel, energy, labor or materials.

COMPANY

About Blizzard Entertainment

Company Profile
Mission Statement
Awards
Partners
Blizzard FAQ
Contact Us

Career Opportunities

Search for Jobs
Job Site Support
Candidate Profile
University Relations
Careers FAQ

Events

BlizzCon
Tournaments

Press

Press Releases
Press Kits

Language: English (US) | Press | Career Opportunities | Privacy Policy | Contact Us | Sitemap

All trademarks referenced herein are the properties of their respective owners.
©2010 Blizzard Entertainment. All rights reserved.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Cormac J. Carney and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

**SACV10- 1495 CJC (MLGx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[X] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐) | **DEFENDANTS** |
|---|---|
| Blizzard Entertainment, Inc. | MICHAEL VANKUIPERS a/k/a "Perma" or "Permaphrost," an individual; MICHAEL SIMPSON a/k/a Matt Cooper, a/k/a Cranix" and "Cranyx"; JOHN ROE a/k/a "linuxawesome" and DOES 1 through 10, inclusive. |
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Marc E. Mayer<br>Jill P. Rubin<br>Mitchell Silberberg & Knupp<br>11377 Olympic Blvd. Los Angeles, CA 90064<br>(310) 312-2000 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only** (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT: $** ________

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT (Place an X in one box only.)**

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

**TORTS PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**BANKRUPTCY**
☐ 22 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities – Employment
☐ 446 American with Disabilities – Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/ Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE / PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R.& Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**PROPERTY RIGHTS**
☒ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 61 HIA(1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW 405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number: SACV10-1495

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**


American LegalNet, Inc. www.FormsWorkflow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): ______

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): ______

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, California<br>Orange County, California | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | British Columbia, Canada |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, California<br>Orange County, California | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): Marc E. Mayer **Date** October 4, 2010

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |



American LegalNet, Inc.
www.FormsWorkflow.com