1   MARC E. MAYER (SBN 190969)
    mem@msk.com
2   JILL P. RUBIN (SBN 240019)
    jpr@msk.com
3   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
4   Los Angeles, California 90064-1683
    Telephone:   (310) 312-2000
5   Facsimile:   (310) 312-3100

6   Attorneys for Plaintiff
    Blizzard Entertainment, Inc.

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11  BLIZZARD ENTERTAINMENT, INC.        CASE NO.   CV 10-1495 CJC (MCGx)
    a Delaware Corporation,
12                                      The Honorable Cormac J. Carney
                Blizzard,
13                                      NOTICE OF *EX PARTE*
          v.                            APPLICATION AND *EX PARTE*
14                                      APPLICATION OF BLIZZARD
    MICHAEL VANKUIPERS a/k/a            ENTERTAINMENT, INC. FOR
15  "Perma" or "Permaphrost," an        LEAVE TO TAKE IMMEDIATE
    individual; MICHAEL SIMPSON a/k/a   DISCOVERY RE: SERVICE OF
16  Matt Cooper, a/k/a Cranix" and      DEFENDANTS; MEMORANDUM
    "Cranyx"; JOHN ROE a/k/a            OF POINTS AND AUTHORITIES
17  "linuxawesome" and DOES 1 through
    10, inclusive,                      [Declaration of Jill Rubin Filed
18                                      Concurrently Herewith]]
                Defendants.
19                                      [Proposed Order Lodged Concurrently
                                        Herewith]
20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

3291845.2

# ***EX PARTE* APPLICATION**

PLEASE TAKE NOTICE that Plaintiff Blizzard Entertainment, Inc. ("Blizzard") hereby applies *ex parte* pursuant to Federal Rule of Civil Procedure 26(d) and Local Rule 7-19 for leave to take certain specified, expedited, pre-service discovery for the limited purpose of learning the true identities, whereabouts, and legal status of Defendant Michael Simpson a/k/a Matt Cooper, a/k/a "Cranix" and "Cranyx," and Does 1 through 10, doing business as sc2hackdev.org (collectively the "Cranix Defendants"), in order to properly add them as named defendants in this action and to serve them with process.

Good cause exists for this Application: (1) despite reasonable and diligent efforts, it has been unable to collect the information necessary to identify and serve the Complaint on the Cranix Defendants, (2) such relief is necessary in revealing the true identities of the Cranix Defendants, and (3) this litigation cannot proceed without the limited discovery requested in this Application.  The discovery sought by this Application is extremely limited, and will not unfairly prejudice Defendants.

The facts surrounding this Application are as follows: Blizzard is a developer and publisher of computer games and related entertainment products, including the most popular computer game franchises in the world, such as "World of Warcraft," "Diablo" and "StarCraft."  Blizzard's most recent computer game product is "StarCraft II."  Defendants, individually or collectively, are software programmers, or "hackers" who operate, collaborate on, distribute, and profit from, unlawful hacks and cheats (the "Hacks").  Among these cheats is a software product entitled "CraniX Maphack."  The CraniX MapHack is distributed via a number of Internet websites, including the website, www.sc2hackdev.org (the "Hacks Website").  The Hacks (including the CraniX MapHack) are designed to modify or hack Blizzard's StarCraft II in order to give users an unfair competitive advantage against other players.  These hacks and cheats not only disrupt or impair

Mitchell
Silberberg &
Knupp LLP

3291845.2

1

the online experience for purchasers of the computer game but also cause serious and irreparable harm to Blizzard and its products.

While some versions of the Hacks are publicly available , in order to conceal the full scope and nature of their infringing conduct, the Cranix Defendants generally do not offer downloads of the Hacks on any publicly accessible webpages, including the publicly accessible pages of the Hacks Website (which appears to be one of the Cranix Defendants' primary source of distribution of the Hacks.)  Instead, upon payment of a fee (payable through third-party service PayPal or a credit card), members of the public are given an anonymous user account that grants them access to "underground" or "private" message boards. These message boards contain links to an online location where the Hacks can be downloaded by registered users.  The "underground" Internet message boards instruct users how to install the Hacks, how to use the Hacks, and how to avoid detection of the Hacks by Blizzard, other users or by anti-cheating technologies. Indeed, providing access to material that infringes Blizzard's copyrights is the very reason why the Hacks Website (and websites like it) exist.

The Cranix Defendants' wrongful acts constitute direct copyright infringement, inducement to infringe copyrights, contributory copyright infringement, vicarious copyright infringement, breach of contract, and intentional interference with contractual relations.  The Cranix Defendants' illegal activities cause significant and irreparable harm to Blizzard.  Yet without the relief requested in the Application, Blizzard will be unable to vindicate its rights.  Although Blizzard has identified the Internet websites through which the Cranix Defendants enable the infringement of Blizzard's valuable intellectual property (and believe that they have identified various names or aliases under which Defendants act), the Cranix Defendants hide their identities, posting and operating their websites anonymously or behind false identities.

To learn the true identities of the Cranix Defendants and their relationship to the infringing activities, Blizzard by this Application seeks to serve a subpoena for the production of documents and depositions, if necessary, pursuant to Federal Rule of Civil Procedure 45 on the following entities:

1.     **CrowdGather, Inc.**, the entity listed as the registrant organization for sc2hackdev.org;

2.     **Guarav Singh**, the individual listed as the registrant for sc2hackdev.org;

3.     **Google, Inc.**, a company that pays the Cranix Defendants for the advertisements posted on sc2hackdev.org and which provides email services for a probable owner of sc2hackdev.org (cranix@gmail.com) and author and distributor of the "CraniX Maphack;"

4.     **AppNexus.Inc.,** a company that pays the Cranix Defendants for the advertisements posted on sc2hackdev.org;

5.     **PayPal, Inc.**, the online payment company through which the Cranix Defendants solicit donations;

6.     **Microsoft Corp.**, the company that provides email services for a probable owner of sc2hackdev.org (biovirus@hotmail.com) and author and distributor of the "CraniX Maphack;"

7.     **eNom, Inc.**, the company through which sc2hackdev.org is registered;

8.     **Alchemy Communications**, the company which hosts the Internet website sc2hackdev.org;

9.     Should these efforts fail, any other third parties that are aware of the identities of the Cranix Defendants that may be uncovered by Blizzard's limited discovery from the seven entities described above.

Good cause also exists for allowing Blizzard to take the requested discovery on an expedited basis.  First, without expedited discovery, crucial evidence is likely to be destroyed.  Second, Blizzard has taken reasonable and diligent steps to

1   locate the Cranix Defendants.  Third, expedited discovery will substantially move

2   this case forward, without prejudice to any responding party.

3           Blizzard could not give notice of this Application to the Cranix Defendants

4   because, as noted above and in the accompanying declaration of Jill P. Rubin, and

5   despite diligent efforts, Blizzard has been unable to ascertain the true identities of

6   the Cranix Defendants, who conduct their activities anonymously or under false

7   names.  Indeed, the very purpose of this Application is to learn those identities.  It

8   follows that Blizzard was unable to give notice to the Cranix Defendants before

9   filing this Application as required by Local Rule 7-19.1.  However, Blizzard has

10  given notice of this Application using the only known means of contact associated

11  with the Cranix Defendants: biovirus@hotmail.com and cranix@gmail.com.

12  Blizzard has reason to believe that the Cranix Defendants receive and regularly

13  review e-mail sent to these addresses.

14          This Application is based upon this *Ex Parte* Application, the attached

15  memorandum of points and authorities, the attached supporting declaration of

16  Jill P. Rubin, the exhibits attached thereto, the Complaint in this action filed on

17  October 4, 2010, and such other and further oral or documentary evidence and

18  legal memoranda as may be presented at or before any hearing on this application.

19

20  DATED: December 13, 2010          MITCHELL SILBERBERG & KNUPP LLP
                                      MARC E. MAYER
21                                    JILL P. RUBIN

22

23                                    By: /s/ Marc E. Mayer
                                          _____
24                                        Marc E. Mayer
                                          Attorneys for Plaintiff
25                                        Blizzard Entertainment, Inc.

26

27

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES............................................. 1

I.      INTRODUCTION............................................................................. 1

II.     STATEMENT OF THE CASE ...................................................... 3

III.    BLIZZARD SHOULD BE GRANTED LEAVE TO TAKE
        IMMEDIATE DISCOVERY TO LEARN DEFENDANTS'
        IDENTITIES ............................................................................. 6

IV.     EXPEDITED DISCOVERY WILL PROMOTE THE
        EFFICIENT ADMINISTRATION OF JUSTICE. ...................... 11

V.      EXPEDITED DISCOVERY WILL NOT PREJUDICE ANY
        RESPONDING PARTY............................................................. 11

VI.     CONCLUSION ....................................................................... 133

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

3291845.2

i

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

# <u>CASES</u>

4

5   *ABKCO Music, Inc. v. Stellar Records, Inc.*,
       96 F.3d 60 (2d Cir. 1996) ............................................................... 10

6

7   *Amini Innovation Corp. v. JS Imps., Inc.*,
       497 F. Supp. 2d 1093 (C.D. Cal. 2007) ......................................... 8

8

9   *Capitol Records, Inc. v. Doe*,
       2007 WL 2429830 (S.D. Cal. Aug. 24, 2007) .............................. 12

10

11  *Columbia Ins. Co. v. Seescandy.com*,
       185 F.R.D. 573 (N.D. Cal. 1999) ......................................... 2, 6, 7

12  *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*,
       106 F.3d 284 (9th Cir. 1997), rev'd on other grounds ................... 8

13

14  *Davidson & Assoc. v. Jung*,
       422 F.3d 630 (8th Cir. 2005) ...................................................... 1, 4

15

16  *Feltner v. Columbia Pictures Television, Inc.*,
       523 U.S. 340 (1998) ....................................................................... 8

17

18  *Gillespie v. Civiletti*,
       629 F.2d 637 (9th Cir. 1980) .......................................................... 6

19

20  *Hallet v. Morgan*,
       296 F.3d 732 (9th Cir. 2002) .......................................................... 6

21  *Knapp v. Americredit Fin. Servs., Inc.*,
       204 F.R.D. 306 (S.D. W. Va. 2001) .............................................. 11

22

23  *Maclin v. Paulson*,
       627 F.2d 83 (7th Cir. 1980) ............................................................ 6

24

25  *MDY Indus., LLC v. Blizzard Entm't, Inc.*,
       2008 WL 2757357 (D. Az. 2008) .................................................. 1

26

27  *Micro Star v. Formgen, Inc.*,
       154 F.3d 1107 (9th Cir. 1998) ....................................................... 1

28

Mitchell
Silberberg &
Knupp LLP

3291845.2

ii

1

## **TABLE OF AUTHORITIES**
### (continued)

2

**Page(s)**

3

*Midway Mfg. Co. v. Artic Int'l, Inc.,*
4
    704 F.2d 1009 (7th Cir. 1983)..................................................................1

5

*Monsanto Co. v. Woods,*
6
    250 F.R.D. 411 (E.D. Mo. 2008)...........................................................10

7

*Munz v. Parr,*
8
    758 F.2d 1254 (8th Cir. 1985)................................................................6

9

*Panavision Int'l, L.P. v. Toeppen,*
10
    141 F.3d 1316 (9th Cir. 1998).................................................................8

11

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
12
    494 F.3d 788 (9th Cir. 2007)................................................................10

13

*Pod-Ners, LLC v. N. Feed & Bean of Lucerne LLC,*
    204 F.R.D. 675 (D. Colo. 2002)..........................................................10
14

15

*Qwest Commc'ns Int'l Inc. v. Worldquest Networks, Inc.,*
    213 F.R.D. 418 (D. Colo. 2003)..........................................................10
16

17

*Rose v. Abraham,*
    2008 WL 3540542 (E.D. Cal. Aug. 13, 2008) ...................................7
18

19

*Semitool, Inc. v. Tokyo Electron Am., Inc.,*
    208 F.R.D. 273 (N.D. Cal. 2002) .................................................7, 11
20

21

*Shaw v. Lindheim,*
    919 F.2d 1353, 1356 (9th Cir. 1990)..................................................10

22

*Sun Microsystems, Inc. v. Microsoft Corp.,*
23
    188 F.3d 1115 (9th Cir. 1999)..............................................................10

24

*Taylor Corp. v. Four Seasons Greetings, LLC,*
    315 F.3d 1039 (8th Cir. 2003).............................................................10
25

26

*Valentin v. Dinkins,*
    121 F.3d 72 (2d Cir. 1997)....................................................................6

27

*Wakefield v. Thompson,*
28
    177 F.3d 1160 (9th Cir. 1999)................................................................6

Mitchell
Silberberg &
Knupp LLP

3291845.2

iii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

# RULES

Fed. R. Civ. P.
    26(d) ...................................................................................................7
    26(f) ....................................................................................................7

# OTHER AUTHORITIES

4 M. & D. Nimmer, Nimmer On Copyright § 14.06[A], at 14-125
    (2007) ............................................................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

3291845.2

iv

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION.

By this *Ex Parte* Application, Blizzard seeks leave to take certain limited early discovery for the sole purpose of learning the true identities of Defendant Michael Simpson a/k/a Matt Cooper, a/k/a "Cranix" and Does 1 through 10 (the "Cranix Defendants"), in order to properly add them as named defendants in this action and serve them with process.

This is a copyright infringement and breach of contract lawsuit arising from the development, distribution, and sale of software "hacks" and "cheats" that are designed to alter and impair the on-line, multi-player functionality of Blizzard's immensely popular computer game, StarCraft II.  Among other things, these "hacks," including the Cranix Defendants' "CraniX MapHack" (at issue in this application) directly alter the gameplay of StarCraft II and in so doing enable their users to secretly obtain an unfair competitive advantage while engaged in online play of StarCraft II, thereby destroying the game experience for purchasers of the game and causing immense harm to Blizzard and its products.

There can be little dispute that the conduct engaged in by the Cranix Defendants, including the Cranix Defendants, constitutes direct copyright infringement and inducement to infringe copyrights.  See, e.g., Midway Mfg. Co. v. Artic Int'l, Inc., 704 F.2d 1009, 1013-1014 (7th Cir. 1983) (copyright infringement via altering gameplay of arcade game); Micro Star v. Formgen, Inc., 154 F.3d 1107 (9th Cir. 1998) (sale of video game "mods" was copyright infringement).  Additionally, such conduct violates (and induces a breach of) the terms of service and end-user license agreements between Blizzard and its customers.  See MDY Indus., LLC v. Blizzard Entm't, Inc., 2008 WL 2757357, *14-15 (D. Az. 2008); Davidson & Assoc. v. Jung, 422 F.3d 630 (8th Cir. 2005).  Moreover, while the individual known as "Cranix" has repeatedly acknowledged online that he is aware of this lawsuit (and has dared Blizzard to "come f*** with

1   me,") he and the other Cranix Defendants have attempted to shield themselves

2   from liability and evade service of this action by hiding behind online aliases and

3   providing false contact information to Blizzard.

4        Courts have recognized that where tortious conduct occurs through on-line

5   activity, "[s]ervice of process can pose a special dilemma for plaintiffs" because

6   tortfeasors are able "to commit certain tortious acts, such as . . . copyright

7   infringement" virtually "pseudonymously or anonymously" by providing

8   "fictitious or incomplete identifying information."  Columbia Ins. Co. v.

9   Seescandy.com, 185 F.R.D. 573, 577-78 (N.D. Cal. 1999).  Under such

10  circumstances, pre-service discovery is appropriate.

11       To learn the identities and whereabouts of the Cranix Defendants and their

12  relationship to the infringing activities, Blizzard seeks certain limited discovery

13  from several entities that are likely to possess information concerning the identity

14  and location of the Cranix Defendants: (1) CrowdGather, Inc., the entity listed as

15  the registrant organization for sc2hackdev.org; (2) Guarav Singh, the individual

16  listed as the registrant for sc2hackdev.org; (3) Google, Inc., a company that pays

17  the Cranix Defendants for the advertisements posted on sc2hackdev.org and which

18  provides emails services for a probable owner of sc2hackdev.org

19  (cranix@gmail.com) and author and distributor of the "CraniX Maphack;" (4)

20  AppNexus.Inc.,  a company that pays the Cranix Defendants for the advertisements

21  posted on sc2hackdev.org; (5) PayPal, Inc., the online payment company through

22  which the Cranix Defendants solicit donations; (6) Microsoft Corp., the company

23  that provides email services for a probable owner of sc2hackdev.org

24  (biovirus@hotmail.com) and author and distributor of the "CraniX Maphack;" (7)

25  eNom, Inc., the company through which sc2hackdev.org is registered; (8) Alchemy

26  Communications, the company which hosts sc2hackdev.org and (9) should these

27  efforts fail, any other third parties that are aware of the identities of the Cranix

1    Defendants that may be uncovered by Blizzard's limited discovery from the

2    entities described above.

3          By virtue of their business and financial relationships with the Cranix

4    Defendants or their predecessors, each of these third parties likely possesses

5    information concerning (or relevant to discovering) the Cranix Defendants' true

6    identities.

7          Accordingly, Blizzard seeks an order from the Court granting leave to serve

8    Rule 45 subpoenas for the production of documents and deposition, if necessary,

9    on these persons and entities immediately.

10

11   **II.    STATEMENT OF THE CASE**

12         **Blizzard and its Products.**  Blizzard is a computer game publisher, engaged

13   in the business of developing, financing, producing, marketing, and distributing

14   popular high-quality software game products for personal computers (PCs)

15   including the including the StarCraft® series of games.  Blizzard is the owner of

16   copyrights in numerous computer software entertainment products, including the

17   computer game "StarCraft II: Wings of Liberty" ("StarCraft II"). Complaint, ¶11.

18   Blizzard's copyright in StarCraft II covers nearly all aspects of the game as

19   distributed, including without limitation, (a) all of the human and machine readable

20   computer code and any other data distributed as part of the game client, (b) all

21   graphical and textual elements of the screens that appear in the game client when

22   the game is executed on a personal computer, (c) all graphical and textual elements

23   of documents distributed with the game client, and (d) all motion picture and sound

24   recordings, and other audio-visual elements distributed with and as part of the

25   game client.  Id.

26         StarCraft II was released on July 27, 2010, after years of anticipation.

27   Complaint, ¶1.  Just two months after its release to the public, StarCraft II became

28   the most popular PC software product currently sold in the United States and is one

Mitchell
Silberberg &
Knupp LLP

3291845.2

3

of the most critically acclaimed computer games ever released.  Id.  Many of Blizzard's games, including the StarCraft® series of games, feature online game play over the Internet via an online gaming service known as "Battle.net" provided by Blizzard ("Battle.net").  See Davidson, 422 F.3d at 633-34 (containing a detailed discussion of the Battle.net service).

**The Map Hacks and The Hacks Website.**  Defendants, including the Cranix Defendants, are software programmers, or "hackers" who operate, collaborate on, and distribute unlawful hacks and cheats for online computer games (the "Hacks"). Complaint, ¶3.  The Hacks are designed to modify or hack StarCraft II, in order to give users unfair competitive advantages (i.e. to allow users to cheat) in the game.  Id.  The Cranix Defendants develop, sell and/or distribute various Hacks, including the CraniX Maphack, via a number of Internet websites, most notably the website www.sc2hackdev.org (the "Hacks Website") which is dedicated to "hacking" activities related to StarCraft II.  Complaint, ¶14.

The Hacks Website is registered through a company eNom, Inc. and is hosted by Alchemy Communications.  CrowdGather, Inc. and Guarav Singh are publicly listed as the registrants of the Hacks Website.  Rubin Decl., ¶15 & Ex. 6, Additionally, advertisements are posted on the Hacks Website by Google, Inc. and AppNexus, Inc., both of which presumably pay the Cranix Defendants for those advertisements. Rubin Decl., ¶16 & Ex. 7,

The Cranix Defendants' conduct plainly is willful: the very purpose of the Hacks and the Hacks Website is to facilitate copyright infringement and to breach and induce breach of terms of service and contracts with Blizzard and/or third party network providers (which specifically prohibit the creation, dissemination, and use of cheating and modification software such as the Hacks).

The Cranix Defendants are well aware that they do not have any license, right, or authority to engage in any of the foregoing infringing activities.  It is well-known to the public, and the Cranix Defendants certainly know, that Blizzard owns

1   the copyright in StarCraft II, and never has authorized the Cranix Defendants to

2   develop and/or distribute hacks or other software that modify StarCraft II or its

3   online components.  For this reason, Blizzard seeks to hold the Cranix Defendants

4   liable for direct copyright infringement, inducement to infringe copyrights,

5   contributory copyright infringement, vicarious copyright infringement, breach of

6   contract, and intentional interference with contractual relations.

7       **The "Underground" Message Boards.**  While some versions of the Hacks

8   are available publicly, in order to conceal the full scope and nature of their

9   infringing conduct, the Cranix Defendants often do not offer downloads of the

10   Hacks on any publicly accessible webpages, including publicly accessible pages of

11   the Hacks Website.  Indeed, content of the Hacks Website is inaccessible without

12   registration.  Upon registration, members of the public are given an anonymous

13   user account that grants them access to "underground" or "private" message

14   boards.  These message boards contain instructions whereby where users can make

15   "donations" to the Cranix Defendants through PayPal 's online payment service

16   and download the Hacks.  The "underground" Internet message boards also

17   instruct users how to install the Hacks (including by offering links to youtube.com

18   webpages where instructional videos are provided), how to use the Hacks, and how

19   to avoid detection of the Hacks by other users or by anti-cheating technologies.

20       **CraniX a/k/a Michael Simpson a/k/a Matt Cooper**.  Through its

21   investigation, Blizzard has reason to believe that an individual named Michael

22   Simpson a/k/a Matt Cooper, a/k/a "Cranix" ("Cranix") is the primary author and

23   driving force behind the Hacks Website.  Blizzard is informed and believes that

24   Defendant "Cranix" resides in Canada, and is named either Michael Simpson or

25   Matt Cooper.  Blizzard has learned that Cranix uses at least two different e-mail

26   accounts:  biovirus@hotmail.com and cranix@gmail.com.  Rubin Decl., ¶2.

27       Based on multiple Internet message board postings by Defendant "Cranix",

28   Blizzard also has learned that Defendant "Cranix" is aware of this lawsuit, has

Mitchell
Silberberg &
Knupp LLP

3291845.2

5

1   received correspondence from Blizzard concerning this lawsuit, but has

2   deliberately refused to respond to any communications from Blizzard.  Moreover,

3   Defendant "Cranix" has communicated to the public that, under cloak of

4   anonymity, he intends to continue his infringing activities (and in fact has

5   challenged Blizzard to com "f*** with me.")  However, despite diligent efforts

6   (*infra* Section III), Blizzard has been unable to locate Defendant "Cranix" or

7   confirm his true identity prior to taking discovery.  Similarly, additional owners

8   and operators of the Hacks Website have hidden their identities.

9

10  **III.   BLIZZARD SHOULD BE GRANTED LEAVE TO TAKE**

11  **IMMEDIATE DISCOVERY TO LEARN DEFENDANTS'**

12  **IDENTITIES**

13          District courts have broad discretion in scheduling discovery, including the

14  discretion to order expedited discovery.  <u>Hallet v. Morgan</u>, 296 F.3d 732, 751 (9th

15  Cir. 2002).  As a threshold matter, courts routinely allow pre-service discovery to

16  identify doe defendants.  <u>See</u> <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir.

17  1980) ("where the identity of [the] alleged defendant[] [is] not [] known prior to

18  the filing of a complaint[,] the plaintiff should be given an opportunity through

19  discovery to identify the unknown defendants, unless it is clear that discovery

20  would not uncover the identities, or that the complaint would be dismissed on other

21  grounds"); <u>see also</u> <u>Wakefield v. Thompson</u>, 177 F.3d 1160, 1163 (9th Cir. 1999)

22  (holding that district court erred in dismissing doe defendant "simply because

23  [plaintiff] was not aware of Doe's identity at the time he filed his complaint");

24  <u>Valentin v. Dinkins</u>, 121 F.3d 72, 75-76 (2d Cir. 1997); <u>Munz v. Parr</u>, 758 F.2d

25  1254, 1257 (8th Cir. 1985); <u>Maclin v. Paulson</u>, 627 F.2d 83, 87 (7th Cir. 1980).

26  Such discovery is especially appropriate where individuals "pseudonymously or

27  anonymously" commit tortious acts over the Internet.  <u>Seescandy.com,</u> 185 F.R.D.

28  at 578-81 (authorizing plaintiff to conduct pre-service discovery to ascertain the

Mitchell
Silberberg &
Knupp LLP
3291845.2

6

1   identities of doe defendants accused of committing trademark infringement over

2   the Internet).

3        Although discovery ordinarily ensues after a defendant has been served with

4   process and the Court has held a Rule 26(f) conference (see Fed. R. Civ. P. 26(d)),

5   the court may authorize expedited discovery for "good cause."  Semitool, Inc. v.

6   Tokyo Electron Am., Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002); see Rose v.

7   Abraham, 2008 WL 3540542 at *2 (E.D. Cal. Aug. 13, 2008).  Good cause exists

8   "where the need for expedited discovery, in consideration of the administration of

9   justice, outweighs the prejudice to the responding party."  Semitool, 208 F.R.D. at

10  276.  Here, good cause exists for expedited discovery.  First, expedited discovery is

11  necessary to identify the Cranix Defendants, to avoid potential spoliation of

12  evidence, and stop the irreparable harm of further infringement.[1]  Second,

13  expedited discovery will promote the efficient administration of justice because it

14  will enable Blizzard to properly name all Defendants and for this action to proceed

15  efficiently toward resolution.  Third, the requested expedited discovery will not

16  prejudice any responding party.

17       *First*, Blizzard has attempted to determine Defendant "Cranix"'s true

18  identity and whereabouts by tracking down information related to the Hacks

19  Website and through Blizzard's Battle.net service (prior to playing StarCraft II, a

20  user must create a Battle.net account).  Declaration of Jill P. Rubin ("Rubin Decl.")

21

---

22  [1] Service of process can pose a special dilemma for plaintiffs in cases like this in
23  which the tortious activity occurred entirely on-line.  The dilemma arises because,
    as here, the defendant may have used a fictitious name and address in the
24  commission of the tortious acts.  With the rise of the Internet has come the ability
    to commit certain tortious acts, such as defamation, copyright infringement, and
25  trademark infringement, entirely on-line.  The tortfeasor can act pseudonymously
    or anonymously and may give fictitious or incomplete identifying information.
26  Parties who have been injured by these acts are likely to find themselves chasing
    the tortfeasor from Internet Service Provider (ISP) to ISP, with little or no hope of
27  actually discovering the identity of the tortfeasor. Seescandy.com, 185 F.R.D. at
    577-78.  In these circumstances, a plaintiff has no choice but to sue the Internet-
    infringer as a "doe" defendant and then seek to learn the identity of the infringer
28  through the discovery process.

Mitchell
Silberberg &
Knupp LLP
3291845.2

1   ¶¶ 2, 3, 7-14.  Through these efforts, Blizzard learned that Defendant "Cranix" was

2   likely an individual named "Michael Simpson" a/k/a "Matt Cooper" located in

3   Canada.  Rubin Decl. ¶¶2, 3.[2]  However, after multiple attempts at service at

4   various addresses purportedly linked to Defendant "Cranix", Blizzard has been

5   unsuccessful at locating the true identity or whereabouts of Defendant "Cranix."

6   Rubin Decl.¶¶ 7, 9.

7        *Second*, Blizzard has attempted to contact Defendant "Cranix" directly.  On

8   September 22, 2010, Plaintiff sent a cease and desist notice to Defendant "Cranix"

9   by email to cranix@gmail.com and biovirus@hotmail.com.  Rubin Decl.¶4 & Ex.

10   1.  Defendant "Cranix" did not respond to Blizzard directly and instead on or about

11   October 14, 2010 stated in a forum on the Hacks Website, that he "got a C&D

12   letter about 2 months ago that I chose to ignored[sic] for reasons, I & my lawyer

13   found it very non threatening & amusing."  Id., Rubin Decl.¶ 5 & Ex. 2.

14

15   _____

   [2] Blizzard clearly has identified the Cranix Defendants with the requisite
16   specificity such that the Court can determine that the Cranix Defendants are "real
   persons."  See Seescandy.com, 185 F.R.D. at 578-80; see also Rubin Decl., ¶¶2, 3,
17   5, 12. Indeed, the persons and entities upon whom Blizzard seeks to serve
   subpoenas will have contact information for the Cranix Defendants based on their
   business and financial relationships with them.
18
   Furthermore, the Court has personal jurisdiction over the Cranix Defendants.
19   Personal jurisdiction exists where a defendant intentionally infringes the
   intellectual property rights of a plaintiff knowing that they are located in
20   California.  See Columbia Pictures Television v. Krypton Broad. of Birmingham,
   Inc., 106 F.3d 284, 289 (9th Cir. 1997) (finding personal jurisdiction in a copyright
21   infringement case where plaintiff television studio alleged that defendant willfully
   infringed plaintiff's copyrights and defendant knew that Blizzard's principal place
22   of business was in the Central District of California), rev'd on other grounds by
   Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340 (1998); Panavision
23   Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998) (finding personal
   jurisdiction in a trademark infringement case where defendant knew that plaintiff
24   would suffer harm in California, as "its principal place of business was in
   California, and the heart of the theatrical motion picture and television industry is
25   located there").  Courts in the Ninth Circuit have specifically held that this
   jurisdictional principle applies to out-of-state defendants who commit copyright
26   infringement over the Internet by virtue of their website.  See Amini Innovation
   Corp. v. JS Imps., Inc., 497 F. Supp. 2d 1093, 1106-07 (C.D. Cal. 2007) (finding
27   personal jurisdiction in a copyright and patent infringement case where plaintiff
   alleged that defendants' operation of website constituted willful infringement and
28   defendants knew that plaintiff was located in California).

Moreover, in that post, Defendant "Cranix" expressly acknowledged that discovery of the sort requested herein may be the only way to gain his identity, noting that "Paypal would not divulge any information pertaining to ones [sic] identity, unless it was subpoenaed by a court of law.  In witch [sic] case your [sic] all [sic] ready f****d if they got you in the court room." Id.

Additionally, after being unsuccessful in its attempts to personally serve Defendant "Cranix," Blizzard again tried to contact Defendant "Cranix" by email. On November 9, 2010, Blizzard emailed a copy of the Complaint to cranix@gmail.com and biovirus@hotmail.com.  Rubin Decl.¶ 12 & Ex. 3.  Again, Defendant "Cranix" did not directly respond to Blizzard.  Id.  Instead, Defendant "Cranix" stated on a forum on the Hacks Website that he "had a rock solid TOS agreement" and that Blizzard should "come f*** with [him]."[3]  Rubin Decl.¶ 12 & Ex. 4.  Moreover, Defendant "Cranix" has recently stated on a forum that he is now "dedicating all [his] time to private hack stability & undetectibility" and implementing a "secure authorization process" to prevent "leaks" of his hacks. Rubin Decl.¶ 17 & Ex. 6.

Expedited discovery is also necessary because there is a tangible risk that the information Blizzard seeks will be destroyed.  ISPs typically retain user activity logs containing the information sought for only a limited period of time – sometimes for as little as a few weeks – before erasing the data.  Rubin Decl.¶ 14. If such information is destroyed, Blizzard will lose the opportunity to identify the Cranix Defendants who are directly involved with the Hacks and the Hacks Website.  Accordingly, if Blizzard is to pursue its lawsuit to protect its copyrighted works, they must have swift access to the ISPs' information.  Where "physical evidence may be consumed or destroyed with the passage of time, thereby

---

[3] The Hacks Website purports to have a Terms of Service Agreement which bars access to Blizzard employees and anyone who "knows" a Blizzard employee. Rubin Decl., ¶ 13 & Ex. 5.

1   disadvantaging one or more parties to the litigation," good cause for expedited

2   discovery exists. <u>Qwest Commc'ns Int'l Inc. v. Worldquest Networks, Inc.</u>, 213

3   F.R.D. 418, 419 (D. Colo. 2003); <u>see</u> <u>Monsanto Co. v. Woods</u>, 250 F.R.D. 411,

4   413 (E.D. Mo. 2008) (granting request for expedited discovery because "as time

5   passes, the likelihood of discovering evidence relevant to their claims will

6   decrease"); <u>Pod-Ners, LLC v. N. Feed & Bean of Lucerne LLC</u>, 204 F.R.D. 675,

7   676 (D. Colo. 2002) (allowing plaintiff expedited discovery to inspect beans in

8   defendant's possession because the beans might no longer be available for

9   inspection if discovery proceeded in the normal course).

10        Finally, expedited discovery is necessary where, as here, the complaint

11   alleges claims of infringement. <u>Qwest</u>, 213 F.R.D.at 419 ("The good cause

12   standard may be satisfied . . . where the moving party has asserted claims of

13   infringement and unfair competition.").[4]  Expedited discovery is necessary because

14   infringement claims involve irreparable harm to the plaintiffs. <u>Sun Microsystems,</u>

15   <u>Inc. v. Microsoft Corp.</u>, 188 F.3d 1115, 1121 (9th Cir. 1999) ("Federal copyright

16   law presumes irreparable harm from the infringement of a copyright."); <u>see</u> <u>also</u> 4

17   M. & D. Nimmer, Nimmer On Copyright § 14.06[A], at 14-125 (2007); <u>Taylor</u>

18   <u>Corp. v. Four Seasons Greetings, LLC</u>, 315 F.3d 1039, 1041-42 (8th Cir. 2003);

19   <u>ABKCO Music, Inc. v. Stellar Records, Inc.</u>, 96 F.3d 60, 66 (2d Cir. 1996).  Here,

20   it is necessary to identify and serve the Cranix Defendants as quickly as possible so

21   as to ensure they do not continue to infringe the copyrights of Blizzard.  Indeed,

22   _____

23   [4] Blizzard's claims for complaint copyright infringement, inducement to infringe
     copyrights, contributory copyright infringement, vicarious copyright infringement,
24   breach of contract, intentional interference with contractual relations against the
     Cranix Defendants will withstand a motion to dismiss.

25   A plaintiff states a claim for copyright infringement by establishing (i) ownership
     of a copyright and (ii) copying. Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir.
26   1990).  Contributory copyright infringement occurs when a defendant "(1) has
     knowledge of another's infringement and (2) either (a) materially contributes to or
27   (b) induces that infringement." Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d
     788, 795 (9th Cir. 2007).  Here, Blizzard has more than adequately pled its claims
28   against the Cranix Defendants.

Mitchell
Silberberg &
Knupp LLP

3291845.2

10

Defendant "Cranix" has repeatedly stated online that he has no intention of ceasing his infringing activity and instead continues to develop new and increasingly undetectable methods for such activities.  Rubin Decl., ¶17 & Exs. 7-9.  In sum, expedited discovery is necessary to identify Defendants, to avoid potential spoliation of evidence, and stop the irreparable harm of further infringement.

## IV.   EXPEDITED DISCOVERY WILL PROMOTE THE EFFICIENT ADMINISTRATION OF JUSTICE.

In addition to being necessary, Blizzard's proposed expedited discovery is critical to ensure that those who operate and profit from the unlawful infringement in this case can be brought before the Court as soon as possible.  Information from the pay services, third party advertisers and ISPs will likely identify the individuals or entities running an infringing website, each of whom should timely be made Defendants in this case.  See Knapp v. Americredit Fin. Servs., Inc., 204 F.R.D. 306, 308-09 (S.D. W. Va. 2001) (granting, in a case with Doe Defendants and a named defendant, expedited discovery because it "further[s] the goal of assuring that the necessary parties are joined and participating in this action at the earliest possible date"); Semitool, 208 F.R.D. at 277 (reasoning that expedited discovery is justified where it will "substantially contribute to moving th[e] case forward").

## V.   EXPEDITED DISCOVERY WILL NOT PREJUDICE ANY RESPONDING PARTY

This Application seeks leave to subpoena CrowdGather, Inc (registrant organization); Guarav Singh (registrant);Google, Inc. (advertiser and email provider);AppNexus. Inc. (advertiser); PayPal, Inc. (payment processer); Microsoft Corp. (email provider);eNom, Inc. (registrant); Alchemy Communications (host), see Rubin Decl.¶¶ 14-16. (collectively, the "Subpoenaed Parties") for the limited purpose of learning the Cranix Defendants' true identities, whereabouts, and

1   relationship to the infringing website.  Each of these third party persons and

2   entities are those most likely to have information that will assist in identifying the

3   Cranix Defendants so that service can be effected.

4           Concurrent with the filing of this Application, Blizzard is notifying the

5   Subpoenaed Parties of the Application's filing and requesting that they each

6   preserve records that may be responsive to Blizzard's discovery.  Rubin Decl. ¶¶

7   18-23.  If the Court grants this Application, Blizzard will promptly serve

8   subpoenas requesting information identifying those affiliated with the Hacks and

9   the Hacks Website.  The Subpoenaed Parties will be able to notify the Cranix

10  Defendants that Blizzard is seeking their identities and all parties will have the

11  opportunity to raise objections by filing a motion to quash in this Court before the

12  return date of the subpoena.  The Subpoenaed Parties will be asked for information

13  that they would have eventually provided in the normal course of discovery, so

14  they take on no extra burden by responding to expedited discovery.  Thus, the

15  Cranix Defendants will not be prejudiced if this Application is granted.

16          In addition, Blizzard's narrowly tailored discovery does not exceed the

17  minimum information required to advance this lawsuit and, thus, will not prejudice

18  the Cranix Defendants or Subpoenaed Parties.  See Capitol Records, Inc. v. Doe,

19  2007 WL 2429830, at *1 (S.D. Cal. Aug. 24, 2007) (motion for immediate

20  discovery granted because of narrow tailoring of requests, allegations of copyright

21  infringement, danger of lost evidence, and need for the discovery to move the case

22  forward).  Here, Blizzard only seeks information necessary to identify the Cranix

23  Defendants, their whereabouts, and their relationship to the Hacks and the Hacks

24  Website.

25          ///

26          ///

27

28

Mitchell
Silberberg &
Knupp LLP

3291845.2

1

## VI.   CONCLUSION

2     For the foregoing reasons, Blizzard's *ex parte* application for leave to take

3 expedited pre-service discovery should be granted.

4

5 DATED: December 13, 2010          MITCHELL SILBERBERG & KNUPP LLP
                                    MARC E. MAYER
6                                   JILL P. RUBIN

7

8                                   By: /s/ Marc E. Mayer
                                       _____
9                                      Marc E. Mayer
                                       Attorneys for Plaintiff
10                                     Blizzard Entertainment, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27