MARC E. MAYER (SBN 190969)
mem@msk.com
JILL P. RUBIN (SBN 240019)
jpr@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Blizzard Entertainment, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLIZZARD ENTERTAINMENT, INC. a Delaware Corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>MICHAEL VANKUIPERS a/k/a "Perma" or "Permaphrost," an individual; MICHAEL SIMPSON a/k/a Matt Cooper, a/k/a Cranix" and "Cranyx"; JOHN ROE a/k/a "linuxawesome" and DOES 1 through 10, inclusive.<br><br>                    Defendants. | Case No. CV 10-1495 CJC (MCGx)<br><br>The Honorable Cormac J. Carney<br><br>**NOTICE OF MOTION AND MOTION OF PLAINTIFF FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT MICHAEL SIMPSON; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JILL P. RUBIN IN SUPPORT THEREOF**<br><br>[Proposed] Judgment Lodged Concurrently Herewith<br><br>Date:       July 11, 2011<br>Time:       1:30 p.m.<br>Ctrm:       9B |

Mitchell
Silberberg &
Knupp LLP

3593497.5

TO DEFENDANT MICHAEL SIMPSON:

PLEASE TAKE NOTICE THAT on July 11, 2011, at 1:30 p.m., or as soon thereafter as this matter may be heard by the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, Plaintiff Blizzard Entertainment Inc. ("Blizzard") will and hereby does, move for an order entering default judgment against Defendant Michael Simpson a/k/a Matt Cooper, a/k/a "Cranix" ("Simpson"), pursuant to Federal Rule of Civil Procedure 55(b)(2). Simpson has been served with the Complaint and is aware of this action, but has not appeared in this action.

Blizzard requests the following relief:

1.    A permanent injunction, pursuant to 17 U.S.C. §502, restricting Simpson and his agents, servants, employees, attorneys, successors, licensees, partners, assigns, and all those acting directly or indirectly in concert or participation with any of them, from infringing, by any means and/or inducing copyright infringement by any means of the exclusive rights of Blizzard and its affiliates, under the Copyright Act, including but not limited to direct copyright infringement, inducement to infringe copyrights, contributory copyright infringement, and vicarious copyright infringement.

2.    An award to Blizzard in the sum of $193,276.72, constituting (a) statutory damages provided by the Copyright Act, 17 U.S.C. § 504, for the infringements alleged in the Complaint, totaling $150,000, (b) attorneys' fees totaling $39,777.76, and (c) costs of suit totaling $3,494.96.

Mitchell
Silberberg &
Knupp LLP

3593497.5

1         This Motion is brought on the grounds that entry of default judgment is

2    appropriate in this case because: (1) Blizzard has satisfied the procedural

3    requirements of Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55-1,

4    (2) Blizzard would suffer prejudice if default judgment is not entered because it

5    would be denied the right to judicial resolution of its claims, (3) the Complaint sets

6    for *prima facie* claims showing that Simpson is liable for copyright infringement

7    inducement to infringe copyrights, contributory copyright infringement, vicarious

8    copyright infringement, breach of contract, and intentional interference with

9    contractual relations, (4) Blizzard seeks $150,000 in statutory damages under the

10   Copyright Act, which constitutes a reasonable award in light of Simpson's willful

11   and brazen infringement, (5) there is no possibility of dispute regarding the

12   material facts of the case, and (6) Simpson's default did not result from excusable

13   neglect, because *inter alia*, he had adequate and ample notice of lawsuit and his

14   obligation to defend himself.

15

16        Notice of this Motion was served on Defendant Simpson by mailing a copy

17   of this Motion to his home address.

18

19        Simpson is not a minor or incompetent person or in military service or

20   otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.

21        //

22        //

23        //

24        //

25        //

26        //

27

28

Mitchell
Silberberg &
Knupp LLP

3593497.5

1    This Motion is based on this Notice of Motion and Motion for Default

2  Judgment, the attached memorandum of points and authorities, the declarations of

3  Jill P. Rubin and Rod Rigole in support, and the pleadings, files and other materials

4  that are on file with the Court or may be presented at the hearing.

5  Dated:  June 6, 2011                    MARC E. MAYER
                                           JILL P. RUBIN
6                                          MITCHELL SILBERBERG & KNUPP LLP

7                                          By:/s/ Marc E. Mayer
8                                              Marc E. Mayer
                                               Attorneys for Plaintiff
9                                              Blizzard Entertainment, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Mitchell
Silberberg &  28
Knupp LLP

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   STATEMENT OF FACTS ..................................................................... 2

III.  PROCEDURAL HISTORY AND SERVICE ON SIMPSON. ................... 8

IV.   BLIZZARD IS ENTITLED TO ITS REQUESTED RELIEF ..................... 9

    A.   Blizzard Has Satisfied The Procedural Requirements For Entry Of Default Judgment Against Simpson ................................. 10

    B.   The Allegations Of The Complaint, Taken As True, Establish Liability On Each Of Blizzard's Claims. ........................... 11

    C.   The Eitel Factors Warrant Entry Of Default Judgment ...................... 14

V.    BLIZZARD'S REQUESTED RELIEF IS APPROPRIATE ....................... 16

    A.   Blizzard Is Entitled To A Permanent Injunction ................................ 16

    B.   Blizzard Is Entitled To $150,000 In Statutory Damages For Simpson's Willful Infringement Of Blizzard's Copyright. ........................................................................................ 19

    C.   Blizzard Is Entitled To Its Reasonable Attorneys' Fees And Costs ......................................................................................... 21

VI.   CONCLUSION .................................................................................... 22

Mitchell
Silberberg &
Knupp LLP

3593497.5

# TABLE OF AUTHORITIES

Page(s)

## CASES

A&M Records, Inc. v. Napster, Inc.,
    239 F.3d 1004 (9th Cir. 2001) ........................................................ 13

Altera Corp. v. Clear Logic, Inc.,
    424 F.3d 1079 (9th Cir. 2005) ........................................................ 13

Apple Computer, Inc. v. Franklin Computer Corp.,
    714 F.2d 1240 (3d Cir. 1983) ........................................................ 18

Arista Records LLC v. Lime Group LLC,
    No. 06 CV 5936 (KMW), 2011 WL 1742029
    (S.D.N.Y. May 2, 2011) ........................................................ 12

Columbia Pictures Indus., Inc. v. Fung,
    No. CV 06-5578 SVW (JCx), 2009 WL 6355911
    (C.D. Cal. Dec. 21, 2009) ........................................................ 12

Columbia Pictures Television, Inc. v.
    Krypton Broad. of Birmingham, Inc.,
    259 F.3d 1186 (9th Cir. 2001)) ........................................................ 19

D.C. Comics Inc. v. Mini Gift Shop,
    912 F.2d 29 (2d Cir. 1990) ........................................................ 20

Davidson & Assocs. v. Jung,
    422 F.3d 630 (8th Cir. 2005) ........................................................ 2, 3, 14

eBay Inc. v. MercExchange, L.L.C.,
    547 U.S. 388 (2006) ........................................................ 17

Eitel v. McCool,
    782 F.2d 1470 (9th Cir. 1986) ........................................................ passim

Elektra Entm't Group Inc. v. Bryant,
    No. CV 03-6381GAF(JTLX), 2004 WL 783123
    (C.D. Cal. Feb. 13, 2004) ........................................................ 10, 14, 16, 18

Elektra Entm't Group Inc. v. Crawford,
    226 F.R.D. 388 (C.D. Cal. 2005) ........................................................ 14

Mitchell
Silberberg &
Knupp LLP

3593497.5

ii

1

### TABLE OF AUTHORITIES
#### (continued)

2

3                                                                                         **Page(s)**

4   Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.,
        807 F.2d 1110 (2d Cir. 1986)......................................................... 19

5

6   Getaped.com, Inc. v Cangemi,
        188 F. Supp. 2d 398 (S.D.N.Y. 2002)......................................... 20

7   Historical Research v. Cabral,
        80 F.3d 377 (9th Cir. 1996)........................................................ 22

8

9   Lava Records, LLC v. Ates,
        No. Civ.A. 05-1314, 2006 WL 1914166
10      (W.D. La. July 11, 2006).......................................................... 17

11

12  LGS Architects, Inc. v. Concordia Homes of Nev.,
        434 F.3d 1150 (9th Cir. 2006).................................................... 12

13

14  Los Angeles News Serv. v. Reuters Television Int'l, Ltd.,
        149 F.3d 987 (9th Cir. 1998)...................................................... 20

15  Magnuson v. Video Yesteryear,
        85 F.3d 1424 (9th Cir. 1996)...................................................... 22

16

17  MAI Sys. Corp. v. Peak Computer, Inc.,
        991 F.2d 511 (9th Cir. 1993)...................................................... 11

18

19  Marcelos v. Dominguez,
        No. C 08-00056 WHA, 2009 WL 230033
20      (N.D. Cal. Jan. 29, 2009)........................................................... 15

21

22  McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.,
        375 F. Supp. 2d 252 (S.D.N.Y. 2005)........................................ 18

23

24  Meadows v. Dom. Rep.,
        817 F.2d 517 (9th Cir. 1987)...................................................... 16

25  Metro-Goldwyn-Mayer Studios, Inc. v. Grokster,
        518 F. Supp. 2d 1197 (C.D. Cal 2007)...................................17, 18

26

27  Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
        545 U.S. 913 (2005) .............................................................12, 13

28

Mitchell
Silberberg &
Knupp LLP

3593497.5

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Micro Star v. Formgen Inc.,
 154 F.3d 1107 (9th Cir. 1998).................................................. 1, 12

Microsoft Corp. v. Coppola,
 No. 06-06701, 2007 WL 1520964 (N.D. Cal. May 24, 2007)...................... 17

Microsoft Corp. v. Wen,
 No. C 99-04561 MEJ, 2001 WL 1456654
 (N.D. Cal. Nov. 13, 2001) ...................................................... 20

Midway Mfg. Co. v. Artic Int'l, Inc.,
 704 F.2d 1009 (7th Cir. 1983)................................................ 1, 11, 12

Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.,
 725 F.2d 1 (1st Cir. 1983) ...................................................... 20

National Football League v. TVRadioNow Corp.,
 Nos. Civ.A. 00-120, Civ.A. 00-121, 2000 WL 34200602
 (W.D. Pa. Feb. 29, 2000)........................................................ 18

Ortiz-Gonzalez v. Fonovisa,
 277 F.3d 59 (1st Cir. 2002) ...................................................... 20

Peer Int'l Corp. v. Pausa Records, Inc.,
 909 F.2d 1332 (9th Cir. 1990)................................................... 20

PepsiCo, Inc. v. Cal. Sec. Cans,
 238 F. Supp.2d 1172 (C.D. Cal. 2002)........................................... 14

PepsiCo v. Triunfo-Mex, Inc.,
 189 F.R.D. 431 (C.D. Cal. 1999) ............................................... 10

Perfect 10, Inc. v. Talisman Commc'ns Inc.,
 No. CV 99-10450 RAPMCX, 2000 WL 364813
 (C.D. Cal. Mar. 27, 2000) .................................................... 20, 21

Rodgers v. Anderson,
 No. 04CIV1149 RJHAJP, 2005 WL 950021
 (S.D.N.Y. Apr. 26, 2005) ...................................................... 20

Mitchell Silberberg & Knupp LLP

3593497.5

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Shanghai Automation Instrument Co., Ltd. v. Kuei,
    194 F. Supp. 2d 995 (N.D. Cal. 2001) ..................................................... 16

Taylor Corp. v. Four Seasons Greetings, LLC,
    403 F.3d 958 (8th Cir. 2005) ................................................................. 17

TeleVideo Sys., Inc. v. Heidenthal,
    826 F.2d 915, 917-918 (9th Cir. 1987 ............................................. 10, 11

Ticketmaster L.L.C. v. RMG Techs., Inc.,
    507 F. Supp. 2d 1096 (C.D. Cal. 2007) .................................................. 12

Twentieth Century Fox Film Corp. v. Streeter,
    438 F. Supp. 2d 1065 (D. Ariz. 2006) .............................................. 15, 21

Visoneering Constr. v. U.S. Fidelity & Guar.,
    661 F.2d 119 (6th Cir. 1981) ................................................................. 10

Walt Disney Co. v. Powell,
    897 F.2d 565 (D.C. Cir. 1990) .............................................................. 17

Warner Bros. Entm't Inc. v. Caridi,
    346 F. Supp. 2d 1068 (C.D. Cal. 2004) ........................................... passim

# STATUTES

17 U.S.C.
    § 106 ..................................................................................................... 11
    § 501 ..................................................................................................... 11
    § 502 ..................................................................................................... 16
    § 504 ..................................................................................................... 19
    § 505 ........................................................................................... 15, 21, 22

50 App. U.S.C. § 521 ................................................................................... 11

# OTHER AUTHORITIES

4 Melville B. Nimmer & David Nimmer, Nimmer On Copyright
    § 14.04[A], at 14-66 (2002) ................................................................... 19

Mitchell
Silberberg &
Knupp LLP

3593497.5

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Fed. R. Civ. P.

     55 .......................................................................................... 9, 10, 11, 16

Local Rule

     55-1 .............................................................................................. 9, 10, 11

     55-3 ......................................................................................................... 21

Mitchell
Silberberg &
Knupp LLP

3593497.5

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3     This a copyright infringement and breach of contract lawsuit arising from

4  the development, distribution, and sale of software "hacks" that are designed to

5  alter and impair the on-line, multi-player functionality of Blizzard's immensely

6  popular computer game StarCraft II.

7     Defendant Simpson (a/k/a "Cranix") is the developer, distributor, and

8  promoter of a software hack entitled "CraniX MapHack." The CraniX MapHack

9  alters the gameplay and presentation of StarCraft II. By doing so, the Cranix

10  MapHack enables users to secretly obtain an unfair competitive advantage while

11  engaged in online play of StarCraft II, thereby destroying the game experience for

12  purchasers of the game and causing immense harm to Blizzard and its products.

13     By creating and distributing the Cranix MapHack, Simpson has violated

14  Blizzard's copyrights in at least the following ways:

15     •     By reverse engineering the Cranix MapHack, Simpson has engaged in

16  the unauthorized reproduction of StarCraft II.

17     •     By creating and distributing the Cranix MapHack, which alters the

18  gameplay of StarCraft II, Simpson has violated Blizzard's exclusive rights to

19  reproduce, adapt, and publicly display StarCraft II. See, e.g., Midway Mfg. Co. v.

20  Artic Int'l, Inc., 704 F.2d 1009, 1013-1014 (7th Cir. 1983) (copyright infringement

21  via altering gameplay of arcade game); Micro Star v. Formgen Inc., 154 F.3d 1107

22  (9th Cir. 1998) (sale of video game "mods" was copyright infringement).

23     •     By encouraging others to download and use the Cranix MapHack, and

24  providing instructions as to how to install and operate the Cranix MapHack,

25  Simpson has induced others to violate Blizzard's exclusive rights and/or materially

26  contributed to such infringement.

27     Additionally, Simpson has violated and induced his customers to violate

Mitchell
Silberberg &     28  written terms of service and end-user license agreements between Blizzard and its
Knupp LLP

3593497.5                                      1

1   customers.  These terms of service expressly prohibit the creation and use of the

2   very type of hacks and cheats created and exploited by Simpson.  See Davidson &

3   Assocs. v. Jung, 422 F.3d 630 (8th Cir. 2005).

4         Finally, it is clear that Simpson's conduct was willful.  The Cranix MapHack

5   has no purpose other than to alter the gameplay of StarCraft II, and Simpson

6   certainly is aware of that fact.  Additionally, both prior to and after formal service

7   under the Hague Convention, Simpson (who repeatedly attempted to evade service

8   behind online aliases and by providing false contact information to Blizzard),

9   repeatedly acknowledged online that he was aware of this lawsuit, has brazenly has

10  continued to exploit the CraniX MapHack, and has dared Blizzard to "come f***

11  with me").  Simpson's continued attempts to avoid the consequences for his

12  actions have done nothing more than delay the inevitable and force Blizzard to

13  incur additional costs in enforcing its rights.

14        Blizzard has attempted to reach out to Simpson on several occasions to

15  discuss this lawsuit and potential avenues for resolution.  Simpson rebuffed all of

16  those efforts and has refused to communicate with Blizzard.  He also has had

17  ample notice of this lawsuit and could have appeared in the action.  Instead, he

18  elected not to appear, while simultaneously taunting Blizzard online.  Because

19  there is no dispute as to the relevant facts and law, and the requested relief is

20  reasonable and appropriate, the requested default judgment should promptly be

21  entered in favor of Blizzard.

22

23  **II.    STATEMENT OF FACTS**

24        **Blizzard and StarCraft II.**  Blizzard Entertainment, Inc. ("Blizzard") is a

25  computer game publisher, engaged in the business of developing, financing,

26  producing, marketing, and distributing high-quality software game products for

27  personal computers (PCs), including the StarCraft® series of games.  Complaint,

28  ¶ 11.  Blizzard is the owner of copyrights in numerous computer software

Mitchell
Silberberg &
Knupp LLP

1    entertainment products, including the computer game "StarCraft II: Wings of

2    Liberty" ("StarCraft II").  Blizzard's copyright in StarCraft II covers nearly all

3    aspects of the game as distributed, including without limitation, (a) all of the

4    human and machine readable computer code and any other data distributed as part

5    of the game client, (b) all graphical and textual elements of the screens that appear

6    in the game client when the game is executed on a personal computer, (c) all

7    graphical and textual elements of documents distributed with the game client, and

8    (d) all motion picture and sound recordings, and other audio-visual elements

9    distributed with and as part of the game client.  Id.  See also Declaration of Rod

10   Rigole ("Rigole Decl."), ¶ 2, Ex. A (United States Copyright Office, Form PA 1-

11   678-433).

12        StarCraft II was released on July 27, 2010, after years of anticipation.

13   Complaint, ¶ 1.  Just two months after its release to the public, StarCraft II became

14   the most popular PC software product currently sold in the United States and is one

15   of the most critically acclaimed computer games ever released.  Id.  Many of

16   Blizzard's games, including the StarCraft® series of games, feature online game

17   play over the Internet via an online gaming service known as "Battle.net" provided

18   by Blizzard ("Battle.net").  See Davidson, 422 F.3d at 633-34 (containing a

19   detailed discussion of the Battle.net service).

20        **The StarCraft EULA and BattleNet Terms of Use.**  In order to play

21   StarCraft II, users must assent to two agreements that govern and restrict the

22   manner in which the game software may be used and exploited.  Complaint, ¶¶ 23-

23   33, Ex. A.

24        First, prior to playing StarCraft II, users must install the game client on a

25   personal computer.  During that installation process, the game client displays a

26   contract to the user titled "STARCRAFT® II: WINGS OF LIBERTY™ END

27   USER LICENSE AGREEMENT" ("EULA").  Complaint, ¶ 23, Ex. A.  Before

28   playing the game for the first time, the user must manifest assent to the EULA by

Mitchell
Silberberg &
Knupp LLP

1  clicking on a button labeled "Accept."  Complaint, ¶ 24.  The user also may

2  decline to enter into this contract by clicking on a button labeled "Decline," at

3  which point the game client will terminate, denying access to the user.  Id.  If a

4  user declines to accept the EULA, he or she may request and obtain a full refund of

5  the purchase price.  Id.

6        The EULA sets forth the terms of a limited use license between Blizzard and

7  the users of StarCraft II, pursuant to which Blizzard grants to the user, subject to

8  the terms of the EULA, a "limited, non-transferable, non-sublicensable, non-

9  exclusive license" to install the game on his or her computer, use the game for

10  noncommercial entertainment purposes, and distribute the game to other users via

11  the Battle.net game service.  Complaint, ¶ 25.  Any use of StarCraft II that is not in

12  accordance with the EULA is expressly prohibited, is outside the scope of the

13  limited license, and thus infringes Blizzard's copyrights.  Id.

14        Among other provisions, the EULA contains an express limitation on the

15  license, which provides that the user may not "use cheats, automation software

16  (bots), hacks, or any other unauthorized third-party software designed to modify

17  the Game experience, including without limitation, mods that violate the terms of

18  this License Agreement or the Terms of Use."  Complaint, ¶ 26.  Additionally, the

19  EULA provides that users may not: "in whole or in part, copy or reproduce (except

20  as provided herein), translate, reverse engineer, derive source code from, modify,

21  disassemble, decompile, or create derivative works based on the Game…"

22  Complaint, ¶ 27, Ex. A, pp. 22-23.

23        Second, once StarCraft II is installed, in order to play the game, a user must

24  create an account with Blizzard on Battle.net.  During the account creation process,

25  Blizzard displays a contract to the user called the Battle.net Terms of Use (the

26  "ToU").  Complaint, ¶ 29, Ex. B.  In order to create a Battle.net account, the user

27  must manifest assent to the ToU by clicking on a button labeled "Accept."

28  Complaint, ¶ 30.  The user also may decline to enter into this contract by clicking

Mitchell
Silberberg &
Knupp LLP

1    on a button labeled "Decline," at which point the account creation process will

2    terminate, denying access to the user. Id. Like the EULA, the ToU provides that

3    the user may not "use cheats, automation software (bots), hacks, mods, or any

4    other unauthorized third-party software designed to modify the [Battle.net]

5    Service, any Game, or any Game experience." Additionally, the ToU prohibits

6    modifying StarCraft II software or adding components to StarCraft II, including

7    using tools to "hack or alter" StarCraft II software. Complaint, ¶ 32. The ToU

8    also states that the user may not "exploit the Game or any of its parts, including

9    without limitation the Game Client, for any commercial purpose..." Id.

10    **Simpson and The Cranix MapHack.** Simpson, a resident of Canada, is a

11    software programmer, or "hacker" who develops, sells and/or distributes various

12    hacks, including the "CraniX MapHack." Declaration of Jill P. Rubin ("Rubin

13    Decl.") ¶¶ 2-10, Complaint, ¶ 3. The CraniX MapHack is sold by Simpson via a

14    number of Internet websites, most notably Simpson's own website

15    www.sc2hackdev.org (the "Hacks Website").[1] Complaint, ¶3. The CraniX

16    MapHack is designed to, and does, modify or "hack" StarCraft II, in order to give

17    users unfair competitive advantages (i.e. to allow users to cheat) in the game. Id.

18    Among other things, the CraniX MapHack alters the game's display during an

19    online match to give the user access to and a view of map locations and

20    information that ordinarily cannot be seen. Id.

21      Simpson's conduct plainly is willful: the very purpose of the hacks and the

22    Hacks Website is to facilitate copyright infringement and to breach, and induce

23    breach, of terms of service and contracts with Blizzard and/or third-party network

24

25

26    [1] After Blizzard served discovery requests on CrowdGather, Inc., the U.S. host of the Hacks Website regarding Simpson's identity, CrowdGather shut the site down

27    apparently recognizing that the site contained infringing content. Soon after, the Hacks Website was re-activated, apparently hosted by an foreign hosting company.

28    Rubin Decl., ¶9.

Mitchell
Silberberg &
Knupp LLP

3593497.5

1   providers (which specifically prohibit the creation, dissemination, and use of

2   cheating and modification software such as the hacks).

3         Simpson certainly knows that he does not have any license, right, or

4   authority to engage in any of the foregoing infringing activities.  It is well known

5   to the public that Blizzard owns the copyright in StarCraft II, and never has

6   authorized Simpson (or any other person or entity) to develop and/or distribute

7   hacks or other software that modify StarCraft II or its online components.  In fact,

8   Simpson is a registered member of Battle.net and user of StarCraft II.  Rubin Decl.,

9   ¶ 2.  As such, Simpson necessarily reviewed and assented to both the EULA and

10  ToU, which prohibit the creation, dissemination, and use of cheating and

11  modification software such as the CraniX MapHack. Id.;  See also Declaration Of

12  Jill P. Rubin In Support Of *Ex Parte* Application For Leave To Take Immediate

13  Discovery To Learn The Identities Of Defendants, Docket No. 6-1 ("Rubin

14  *Ex Parte* Decl."), ¶ 3.

15        **The Hacks Website.**  Simpson's knowledge of the infringing nature of his

16  conduct also is revealed by the manner in which he has operated the Hacks

17  Website.  Specifically, in order to conceal the full scope and nature of his

18  infringing conduct, Simpson does not offer downloads of the Cranix MapHack on

19  any publicly accessible webpages.  Instead, after receiving notice of this lawsuit,

20  Simpson made much of the Hacks Website inaccessible to the public without prior

21  registration and webmaster approval.  Rubin *Ex Parte* Decl., ¶ 13, Ex. 5.  Upon

22  registration and payment of a "donation" to Simpson, members of the public are

23  given a user account that grants them access to "underground" or "private"

24  message boards.  These message boards contain instructions whereby users can

25  download hacks.  The "underground" Internet message boards also instruct users

26  how to install the Cranix MapHack (including by offering links to youtube.com

27  webpages where instructional videos are provided), how to use the Cranix

Mitchell
Silberberg &   28
Knupp LLP

1   MapHack, and how to avoid detection of the CraniX MapHack by other users or by

2   Blizzard's anti-cheating technologies.  Rubin Decl., ¶ 7.

3          **Simpson Continues To Infringe After Notice of This Lawsuit.**  In the late

4   summer and early fall of 2010, Blizzard conducted an investigation into the true

5   identity and whereabouts of "Cranix" by tracking down information related to the

6   Hacks Website and through Blizzard's Battle.net service (prior to playing StarCraft

7   II, a user must create a Battle.net account).  Rubin Decl., ¶ 2, & Rubin *Ex Parte*

8   Decl., ¶¶ 2-3.  Through these efforts, Blizzard learned that "Cranix" was likely an

9   individual named Michael Simpson located in Canada.  Id.

10         On September 22, 2010, Blizzard sent a letter to Simpson advising him of its

11  claims and demanding that he immediately cease distribution of the Cranix

12  MapHack or any other similar software product.  Simpson did not respond to the

13  letter.  However, shortly thereafter Simpson acknowledged in online message

14  boards that he received the letter and did not intend to comply.  See Rubin Decl.,

15  ¶ 3 & Rubin *Ex Parte* Decl., ¶ 5, Ex. 2 (I "got a C&D letter about 2 months ago

16  that I chose to ignored [sic] for reasons, I & my lawyer found it very non

17  threatening & amusing.").

18         On November 4, 2010, Blizzard filed the Complaint.  On November 9, 2010,

19  Blizzard emailed a copy of the Complaint to Simpson.  Again, Defendant "Cranix"

20  did not directly respond to Blizzard, but instead, stated on a web forum on the

21  Hacks Website that he "had a rock solid TOS agreement" and that Blizzard should

22  "come f*** with me."

23         Following service of the Complaint under the Hague Convention, Cranix

24  again stated publicly that he was served with the Complaint but intends to continue

25  his infringing activities.  Rubin Decl., ¶ 12. (stating "what are these 'copyright

26  laws' that [Blizzard] speaks of?")  Additionally, after Simpson's Internet hosting

27  service terminated access to his infringing message boards (apparently after

Mitchell
Silberberg &   28
Knupp LLP

3593497.5

7

1   learning of the lawsuit), Simpson relocated to a new web host outside the United
2   States.  Rubin Decl., ¶ 9.

3          As of the present time, the Cranix MapHack continues to be made available
4   by Simpson on the Hacks Website.

5          **The Severe and Irreparable Continuing Harm To Blizzard**.  The harm to
6   Blizzard from Simpson's conduct is immediate, massive and irreparable.  By
7   distributing hacks to the public, Simpson causes serious harm to the value of
8   StarCraft II.  Rigole Decl., ¶¶ 5-11.  Among other things, his activities irreparably
9   harm the ability of Blizzard's legitimate customers (*i.e.*, those who purchase and
10  use unmodified games) to enjoy and participate in the competitive online
11  experience.  Id.  That, in turn, causes users to grow dissatisfied with the game, lose
12  interest in the game, and communicate that dissatisfaction, thereby resulting in lost
13  sales of the game or "add-on" packs and expansions thereto.  Id.

14

15  **III.   PROCEDURAL HISTORY AND SERVICE ON SIMPSON.**

16          This lawsuit was filed on November 4, 2010.

17          Following unsuccessful attempts to serve Simpson, on December 13, 2010,
18  Blizzard filed (and on December 15, 2011, the Court granted) an *Ex Parte*
19  Application for Leave to Take Immediate Discovery re: Service of Defendants.
20  Docket No. 6.  Thereafter, Blizzard served various subpoenas for the purpose of
21  learning the true identity, whereabouts, and legal status of Simpson and the Hacks
22  Websites, on various ISPs, advertising companies, and internet payment services.
23  Rubin Decl., ¶ 8.  Based on information provided in response to those subpoenas,
24  in January 2011, Blizzard learned that Simpson's last known residence was in
25  Ontario, Canada.  Rubin Decl., ¶ 10.[2]

26
27  [2] In the course of this third-party discovery, CrowdGather, Inc., the U.S. registrant
    for the Hacks Website determined Simpson's infringing activities via the Hacks
    Website violated its terms of service.  CrowdGather subsequently terminated
28  Simpson's access through CrowdGather.  In a further attempt to shield his willful
    (...continued)

Mitchell
Silberberg &
Knupp LLP

3593497.5

1    On January 18, 2011, Blizzard served Simpson by delivering a copy of the

2    Summons and Complaint to his last known residence (Docket No. 8).

3    Concurrently, Blizzard commenced service on Simpson through the Hague

4    Convention.  Rubin Decl., ¶ 11.

5    On March 17, 2011, Blizzard was informed by the Canadian Central

6    Authority that Simpson had been served via the Hague Convention on March 1,

7    2011.3  Rubin Decl. ¶ 13.  Blizzard received the proofs of service from the

8    Canadian Central Authority on March 29, 2011 and filed these proofs the

9    following day.  Rubin Decl., ¶ 15, Docket Nos. 9 & 10.

10    Pursuant to service under the Hague Convention, Simpson's response to the

11    Complaint was due on March 21, 2011.  Simpson did not respond and is in default.

12    On March 29, 2011, Blizzard requested that the clerk enter Simpson's

13    default.  Docket No. 11.  Default was entered on April 11, 2011.  Docket No. 13.

14

15    **IV.    BLIZZARD IS ENTITLED TO ITS REQUESTED RELIEF**

16    In addition to the applicable procedural requirements, <u>see</u> Local Rule 55-1

17    and Fed. R. Civ. P. 55(b)(2), a court's decision to grant default judgment is guided

18    by the following factors (known as the <u>Eitel</u> factors):

19
20    (1) the possibility of prejudice to the plaintiff, (2) the merits of
plaintiff's substantive claim, (3) the sufficiency of the complaint,
(4) the sum of money at stake in the action, (5) the possibility of a
21    dispute concerning material facts, (6) whether the default was due to
excusable neglect, and (7) the strong policy underlying the Federal
22    Rules of Civil Procedure favoring decisions on the merits.

23

24    (…continued)

25    infringing activities, Simpson has since arranged to have the Hacks Website hosted
by a French company and is now preventing any public access to the Hacks
26    Website.  Rubin Decl., ¶ 9.

27    3 On March 2, 2011, Simpson posted a copy of the Summons and Complaint on the
Hacks Website along with the comment "What are these 'copyright laws' they
28    speak of?"  Rubin Decl., ¶ 12.

Mitchell
Silberberg &
Knupp LLP

1   Eitel v. McCool, 782 F.2d 1470, 1471-1472 (9th Cir. 1986); see also Warner Bros.

2   Entm't Inc. v. Caridi, 346 F. Supp. 2d 1068, 1071-1073 (C.D. Cal. 2004) (granting

3   default judgment based on Eitel factors).  While the decision to grant a default

4   judgment is left to the sound discretion of the Court, "default judgments are more

5   often granted than denied." PepsiCo v. Triunfo-Mex, Inc., 189 F.R.D. 431, 432

6   (C.D. Cal. 1999).

7        In determining whether to grant a default judgment, "[t]he general rule of

8   law [is] that upon default the factual allegations of the complaint, except those

9   relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v.

10  Heidenthal, 826 F.2d 915, 917-918 (9th Cir. 1987).  See also Visoneering Constr.

11  v. U.S. Fidelity & Guar., 661 F.2d 119, (6th Cir. 1981) (once a default is entered

12  against a defendant, "that party is deemed to have admitted all of the well pleaded

13  allegations in the complaint.").  While a plaintiff must "prove up" damages when

14  seeking a default judgment, this evidentiary burden is "relatively lenient." Elektra

15  Entm't Group Inc. v. Bryant, No. CV 03-6381GAF (JTLX), 2004 WL 783123, at

16  *2 (C.D. Cal. Feb. 13, 2004).  In determining damages, the Court may rely on

17  declarations submitted by the plaintiff.  See Fed. R. Civ. P. 55(b)(2).

18       Blizzard has satisfied the procedural requirements of the Federal and Local

19  Rules, the Eitel factors weigh in favor of entering default judgment against

20  Simpson, and Blizzard's requested relief is reasonable and supported.

21       **A.    Blizzard Has Satisfied The Procedural Requirements For Entry**

22            **Of Default Judgment Against Simpson**

23       The requirements of Federal Rule of Civil Procedure 55(b)(2) and Local

24  Rule 55-1 plainly have been met.  On March 1, 2011, Blizzard served the summons

25  and Complaint on Simpson through the Hague Convention.  Docket Nos. 9 & 10,

26  and on April 11, 2011, the Clerk entered Simpson's default as to the Complaint.

27  Docket No. 13.  See L.R. 55-1(a), (b).  Simpson is not an infant or an incompetent

28  person.  Rubin Decl., ¶ 17.  See L.R. 55-1(c).  The Servicemembers Civil Relief

Mitchell
Silberberg &
Knupp LLP

3593497.5

10

1    Act (50 App. U.S.C. § 521) does not apply. <u>Id.</u>  <u>See</u> L.R. 55-1(d).  And Blizzard

2    timely notified Simpson of this Motion for Default Judgment.  Rubin Decl., ¶ 26.

3    <u>See</u> L.R. 55-1(e); Fed. R. Civ. P. 55(b)(2).

4           **B.     <u>The Allegations Of The Complaint, Taken As True, Establish</u>**

5                  **<u>Liability On Each Of Blizzard's Claims.</u>**

6           As noted, after the entry of default, the factual allegations of the complaint

7    are taken as true. <u>Heidenthal</u>, 826 F.2d at 917-18.  Blizzard's Complaint pleads

8    facts sufficient, as a matter of law, to establish that Simpson is liable for copyright

9    infringement, contributory and vicarious infringement, breach of contract, and

10   intentional interference with contract.

11          **Copyright Infringement.**  As the owners of the copyright in StarCraft II,

12   Blizzard possesses the exclusive rights to, among other things, reproduce, adapt,

13   distribute, and publicly display its computer game (and the source code contained

14   therein). 17 U.S.C. §§ 106, 501.  Simpson has infringed Blizzard's copyright in at

15   least three different ways:

16          ●      In the process of reverse engineering StarCraft II to create the Cranix

17   MapHack, Simpson necessarily reproduced StarCraft II and copied StarCraft II

18   source code into his computer's RAM without the authorization of Blizzard. <u>MAI</u>

19   <u>Sys. Corp. v. Peak Computer, Inc.</u>, 991 F.2d 511, 519 (9th Cir. 1993) ("the loading

20   of software into a computer constitutes the creation of a copy under the Copyright

21   Act.")

22          ●      The Cranix MapHack, once installed on a user's computer, alters the

23   gameplay and presentation of StarCraft II. <u>Midway Mfg. Co. v. Artic Int'l, Inc.</u>,

24   704 F.2d 1009, 1013-1014 (7th Cir. 1983) (copyright infringement via altering

25   gameplay of arcade game).  By developing and distributing the Cranix MapHack,

26   Simpson has violated Blizzard's rights of reproduction, adaptation, and

27   distribution. <u>Micro Star v. Formgen Inc.</u>, 154 F.3d 1107 (9th Cir. 1998) (sale of

28   video game "mods" was copyright infringement).

Mitchell
Silberberg &
Knupp LLP

3593497.5

1       •   By installing StarCraft II on his personal computer in the process of

2 developing and test the Cranix MapHack, Simpson reproduced StarCraft III

3 outside the scope of his limited license with Blizzard and thereby violated

4 Blizzard's exclusive rights of reproduction. LGS Architects, Inc. v. Concordia

5 Homes of Nev., 434 F.3d 1150, 1156 (9th Cir. 2006) ("When a licensee exceeds

6 the scope of the license granted by the copyright holder, the licensee is liable for

7 infringement.").

8       **Secondary Copyright Infringement**. Users who purchased and installed

9 the Cranix MapHack infringed StarCraft II by altering its gameplay and

10 presentation and thereby creating a derivative work of the video game. See

11 Midway, 704 F.2d at 1013-14. Additionally, such users infringed Blizzard's

12 exclusive rights by installing the Cranix MapHack to their computers in violation

13 of their limited license under the EULA. Ticketmaster L.L.C. v. RMG Techs.,

14 Inc., 507 F. Supp. 2d 1096, 1107 (C.D. Cal. 2007). Simpson is secondarily liable

15 for these users' conduct in the following ways:

16       •   Simpson induced users of the Cranix MapHack to engage in copyright

17 infringement by encouraging them to download and install the Cranix MapHack,

18 providing instructions on how to install and use the Cranix MapHack (including

19 how to avoid detection of the Cranix MapHack), and publicly touting the Cranix

20 MapHack over the Internet. Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,

21 545 U.S. 913, 936-937 (2005) ("[O]ne who distributes a device with the object of

22 promoting its use to infringe copyright, as shown by clear expression or other

23 affirmative steps taken to foster infringement, is liable for the resulting acts of

24 infringement by third parties."); Columbia Pictures Indus., Inc. v. Fung, No. CV

25 06-5578 SVW (JCx), 2009 WL 6355911, *12 (C.D. Cal. Dec. 21, 2009) ("The

26 record is replete with such instances of technical assistance . . . ."); Arista Records

27 LLC v. Lime Group LLC, No. 06 CV 5936 (KMW), 2011 WL 1742029, at *18

Mitchell
Silberberg &
Knupp LLP
28

1   (S.D.N.Y. May 2, 2011) (defendant "actively assisted LimeWire users in

2   committing infringement.")

3   • By making the Cranix MapHack available for download to the public,

4   assisting users in locating and installing the Cranix MapHack, and creating an

5   "underground" message board that allowed users to obtain the Cranix MapHack

6   with complete anonymity, Simpson materially contributed to users' infringement,

7   with knowledge of their infringing conduct. A&M Records, Inc. v. Napster, Inc.,

8   239 F.3d 1004, 1019 (9th Cir. 2001) ("[O]ne who, with knowledge of the

9   infringing activity, induces, causes or materially contributes to the infringing

10  conduct of another, may be held liable as a 'contributory' infringer.") (quotation

11  marks and citation omitted). Blizzard's demand letters to Simpson also gave him

12  knowledge of the infringing activity. Rubin Decl., ¶¶ 3,6.

13  • One "infringes vicariously by profiting from direct infringement while

14  declining to exercise a right to stop or limit it." Grokster, 545 U.S. at 930.

15  Simpson profited from users' direct infringement by *selling* copies of the Cranix

16  MapHack. Simpson also used the Cranix MapHack to draw traffic to his website.

17  Napster, 239 F.3d at 1023 (infringing content was a "draw" that "enhance[d] the

18  attractiveness of a venue" to its customers) (citation omitted). Simpson could

19  easily stop or limit infringement by removing the Cranix MapHack from his

20  website or disabling the functionality of the software.

21  **Breach of Contract and Inducing Breach of Contract.** The EULA and

22  ToU are enforceable agreements that clearly prohibit players of StarCraft II from

23  using "cheats, automation software (bots), hacks, or any other unauthorized third-

24  party software designed to modify the Game experience, including without

25  limitation, mods that violate the terms of this License Agreement or the Terms of

26  Use." Complaint, Ex. A, pp. 22-23; Ex. B, pp. 30-31. Altera Corp. v. Clear Logic,

27  Inc., 424 F.3d 1079, 1090-1091 (9th Cir. 2005) (software license agreements are

28  valid and enforceable); Davidson, 422 F.3d at 639 (defendant liable for breach of

Mitchell
Silberberg &
Knupp LLP

3593497.5                                    13

1   Battle.net terms of service).  Simpson himself violated these terms when he created

2   and necessarily tested the Cranix MapHack.  And, by offering the Cranix

3   MapHack to the public and encouraging and instructing users about how to install

4   and use the software, Simpson intentionally induced a breach of the EULA and

5   ToU by each of these users.

6        **C.**    **The Eitel Factors Warrant Entry Of Default Judgment**

7       *(1) Possibility of Prejudice:*  The first <u>Eitel</u> factor considers whether

8   Blizzard will suffer prejudice if default judgment is not entered.  <u>Eitel</u>, 782 F.2d at

9   1471-72.  Prejudice exists where, absent entry of a default judgment, the plaintiff

10  would lose the right to a judicial resolution of its claims and it would be without

11  other recourse of recovery.  <u>See</u> <u>Elektra Entm't Group Inc. v. Crawford</u>,

12  226 F.R.D. 388, 392 (C.D. Cal. 2005); <u>Bryant</u>, 2004 WL 783123, at *3.  Without a

13  default judgment, Blizzard would be deprived of the right to judicial resolution of

14  its claims for copyright infringement, and Simpson will have profited from his

15  willful infringement.

16      *(2) Merits of Claim and (3) Sufficiency of Complaint:*  The second and

17  third <u>Eitel</u> factors "require that a plaintiff state a claim on which the [plaintiff] may

18  recover."  <u>PepsiCo, Inc. v. Cal. Sec. Cans</u>, 238 F. Supp. 2d 1172, 1175 (C.D. Cal.

19  2002) (citations omitted).  As set forth above, Blizzard has stated numerous claims

20  for relief.

21      *(4) Amount at Stake*  Under the fourth <u>Eitel</u> factor, "the court must consider

22  the amount of money at stake in relation to the seriousness of Simpson's conduct."

23  <u>PepsiCo</u>, 238 F. Supp. 2d at 1176.  For each work infringed, the Copyright Act

24  permits the copyright owner to recover statutory damages in an amount between

25  $750 and $30,000.  17 U.S.C. § 504(c)(1).  And, where the infringement was

26  willful, the per infringement award rises to $150,000.  17 U.S.C. § 504(c)(2).  As

27  the prevailing party, Blizzard also is entitled to its reasonable attorneys' fees.

28  17 U.S.C. § 505; <u>see</u> <u>Twentieth Century Fox Film Corp. v. Streeter</u>, 438 F. Supp.

Mitchell
Silberberg &
Knupp LLP

3593497.5

14

1   2d 1065, 1074 (D. Ariz. 2006) (plaintiff securing default judgment is "prevailing

2   party"). As a result of Simpson's unlawful conduct, Blizzard prayed for injunctive

3   relief, statutory damages, and Blizzard's reasonable attorneys' fees and costs.

4   Complaint, Prayer ¶¶ 1- 7. Because Simpson's conduct was willful (as discussed

5   in more detail *infra* at Section V(B)), Blizzard is entitled to seek $150,000 per

6   work infringed.[4] These requested damages are manifestly reasonable.

7       **(5) *Possibility of Dispute Regarding Material Facts:*** The fifth <u>Eitel</u> factor

8   requires the Court to consider the possibility of a dispute as to a material fact.

9   <u>Eitel</u>, 782 F.2d at 1471-72. As a threshold matter, there is no possible dispute

10  concerning the material facts because the factual allegations of Blizzard's

11  Complaint are taken as true. <u>Marcelos v. Dominguez,</u> No. C 08-00056 WHA,

12  2009 WL 230033, at *4 (N.D. Cal. Jan. 29, 2009). In any event, the facts alleged

13  in the Complaint are straightforward, confirmed by Blizzard's investigation and by

14  the technology itself, and are not subject to reasonable dispute. In fact, Simpson's

15  website (www.sc2hackdev.org) remains accessible to the public and its contents

16  are capable of immediate verification.

17      **(6) *Possibility of Excusable Neglect:*** Under the sixth <u>Eitel</u> factor, the Court

18  considers whether Simpson's default resulted from excusable neglect. <u>Eitel,</u>

19  782 F.2d at 1471-72. Simpson failed to answer or file a responsive pleading

20  despite *repeated* notice of this action and his infringing conduct. Simpson's

21  conduct is not excusable, including because he was served with process (Docket

22  Nos. 8, 9 & 10), yet never made any attempt to file a responsive pleading nor even

23  to respond to Blizzard's many attempts to communicate other than by posting

24  multiple online "taunts" regarding his purported invulnerability. <u>See</u> <u>Meadows v.</u>

25  ─────────────────
    [4] Blizzard has suffered damages as a result of Simpson's conduct. However,
26  because of the (maybe unrecoupable) cost associated with determining damages in
    default, Blizzard has elected to seek damages based only on its copyright claims.
27  By so limiting its request for damages in this Motion, Blizzard does not intend to
    imply that it has not suffered significant damages as a result of Blizzard's other
28  claims.

Mitchell
Silberberg &
Knupp LLP

3593497.5

15

1   Dom. Rep., 817 F.2d 517, 521 (9th Cir. 1987) ("A defendant's conduct is culpable

2   if he has received actual or constructive notice of the filing of the action and failed

3   to answer."). Further, Simpson did not seek to lift the default or in any way defend

4   against this lawsuit, though he had ample notice and opportunity to do so. Rubin

5   Decl., ¶ 18. There is no excusable neglect. Shanghai Automation Instrument Co.,

6   Ltd. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (defendant's default

7   when properly served with complaint and notice of entry of default not attributable

8   to excusable neglect).

9        *(7) Policy for Deciding Case on the Merits:* The final Eitel factor considers

10   the preference for deciding cases on the merits. Eitel, 782 F.2d at 1471-72.

11   "However, this factor, standing alone, cannot suffice to prevent entry of default

12   judgment for otherwise default judgment could never be entered." Caridi, 346 F.

13   Supp. 2d at 1073. Indeed, Rule 55 specifically authorizes the termination of a case

14   before a hearing on the merits in these precise circumstances. See Bryant, 2004

15   WL 783123, at *5. Here, the only reason this lawsuit cannot proceed to the merits

16   is because Simpson, *after notice*, failed to appear and defend this action.

17        In sum, the balance of Eitel factors weigh in Blizzard's favor, and the Court

18   should grant this motion and enter default judgment against Simpson.

19

20   **V.    BLIZZARD'S REQUESTED RELIEF IS APPROPRIATE**

21        **A.    Blizzard Is Entitled To A Permanent Injunction**

22        The Copyright Act specifically authorizes the Court to grant injunctive relief

23   to "prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). A

24   permanent injunction is appropriate where the plaintiff proves (1) irreparable

25   injury, (2) the inadequacy of legal remedies, (3) the balance of hardships favor an

26   injunction, and (4) "that the public interest would not be disserved by a permanent

27   injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). All of

28   these factors favor granting a permanent injunction here.

Mitchell
Silberberg &
Knupp LLP

3593497.5

1    ***Irreparable Injury and Inadequate Legal Remedy:***  These two inquiries

2    collapse into one, <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster</u>, 518 F. Supp.

3    2d 1197, 1219-20 (C.D. Cal 2007).  As set forth in the declaration of Rod Rigole,

4    both are present here.

5        *First*, Simpson's continuing infringements and the almost certain likelihood

6    of future infringements (proven by, *inter alia*, Simpson's continued willful

7    infringing activities on the Hacks Website)[5], establish irreparable injury.  <u>Walt</u>

8    <u>Disney Co. v. Powell</u>, 897 F.2d 565, 568 (D.C. Cir. 1990) (granting injunction

9    where "history of continuing infringement and a significant threat of future

10   infringement remains"); <u>Microsoft Corp. v. Coppola</u>, No. 06-06701, 2007 WL

11   1520964, at *3 (N.D. Cal. May 24, 2007) (granting permanent injunction where

12   plaintiff continued to infringe despite actual notice of infringement).

13       *Second*, irreparable injury exists here because an award of monetary

14   damages against Simpson likely will not prevent or deter the adverse, long-term

15   effect on Blizzard's ability to exploit their copyrighted works.  <u>See</u> <u>Grokster,</u>

16   518 F. Supp. 2d at 1217-18 (finding irreparable injury because defendant

17   "induce[d] far more infringement than it could ever possibly redress with

18   damages"); <u>Lava Records, LLC v. Ates</u>, No. Civ.A. 05-1314, 2006 WL 1914166,

19   at *3 (W.D. La. July 11, 2006) (awarding permanent injunction, in part, because of

20   "the need to prevent irreparable harm to Plaintiffs, which will not be remedied by a

21   damage award that may or may not be collectible").

22       *Third*, Simpson's infringement deprives Blizzard of the fundamental right of

23   a property owner to control how, by whom, and in what manner its works are used.

24   <u>See</u> <u>Taylor Corp. v. Four Seasons Greetings, LLC,</u> 403 F.3d 958, 968 (8th Cir.

25   2005).

26

27   _____
     [5] On March 23, 2011, Simpson released a new "patch" to the CraniX MapHack
     entitled "HackDev Private MapHack v.1.3.1.18092."  Rubin Decl., ¶ 14.

Mitchell
Silberberg &   28
Knupp LLP

***Balance of Hardships:***  Likewise, the third factor favors granting Blizzard's requested permanent injunction.  Many of the same reasons supporting a finding of irreparable injury also show the extreme hardships faced by Blizzard.  <u>See</u> <u>Grokster</u>, 518 F. Supp. 2d at 1220.  Conversely, Simpson would face little, if any, hardship if the Court were to enter the permanent injunction.  The permanent injunction is narrowly tailored such that it prohibits only future infringing conduct by Simpson,[6] and the injunction does not limit Simpson's ability to engage in lawful business via the Internet.  Even assuming any nominal prejudice to Simpson, the strong likelihood that Simpson would engage in further infringing conduct "necessarily" tips the balance of hardships in Blizzard's favor.  <u>See</u> <u>id</u>. at 1222.

***Public Interest:***  The fourth and final factor also supports granting the permanent injunction.  "[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work."  <u>Apple Computer, Inc. v. Franklin Computer Corp.</u>, 714 F.2d 1240, 1255 (3d Cir. 1983) (quotation marks and citation omitted).  Thus, Blizzard is entitled to a permanent injunction against Simpson.[7]

---

[6] Courts routinely issue permanent injunctions enjoining a defendant from infringing in the future.  <u>E.g.</u>, <u>Bryant,</u> 2004 WL 783123, at *6 n.4.

[7] Simpson's Canadian residence should not affect the Court's willingness to grant a permanent injunction against his infringing activities, since the hacks were accessible by U.S. users, and the infringements thereon were directed at U.S. plaintiffs.  <u>See</u> <u>McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.,</u> 375 F. Supp. 2d 252, 257 (S.D.N.Y. 2005) (suit for injunctive relief against Canadian defendant for copyright infringement appropriate "where plaintiff seeks an injunction that applies to activities felt within the United States"); <u>National</u> <u>Football League v.</u> <u>TVRadioNow Corp.,</u> Nos. Civ.A. 00-120, Civ.A. 00-121, 2000 WL 34200602, at *1 (W.D. Pa. Feb. 29, 2000) (Canadian corporation permanently enjoined from violating copyrights of U.S. plaintiffs, and required to log and report all of defendant's online transmissions of plaintiffs' content "whether originating in Canada or elsewhere").

Mitchell
Silberberg &
Knupp LLP

3593497.5

**B.      Blizzard Is Entitled To $150,000 In Statutory Damages For Simpson's Willful Infringement Of Blizzard's Copyright.**

Section 504(a) of the Copyright Act provides that "an infringer of copyright is liable for . . . (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a). Section 504(c) provides that: "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). See also Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc., 807 F.2d 1110, 1114 (2d Cir. 1986) (copyright "owner may elect to recover – instead of actual damages and profits – statutory damages under [17 U.S.C.] § 504(c)(1) for those works whose copyrights were registered at the time the infringement occurred"); 4 Melville B. Nimmer & David Nimmer, Nimmer On Copyright ("Nimmer") § 14.04[A], at 14-66 (2002) ("Under the current [Copyright] Act, the copyright owner may elect to recover statutory damages, instead of actual damages and defendant's profits."). If, as here, the infringement is willful, the award may be increased to $150,000 for each work infringed. 17 U.S.C. § 504(c)(2).

Electing statutory damages eliminates any requirement that Blizzard present evidence of actual damages. "Under the current Act, the copyright owner may elect to recover statutory damages, instead of actual damages and defendant's profits. He may, moreover, make such an election regardless of the adequacy of the evidence offered as to his actual damages and the amount of defendant's profits, and even if he has intentionally declined to offer such evidence, although it was available." 4 Nimmer, § 14.04[A], at 14-66; see also Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1194 (9th Cir. 2001), cert. denied, 534 U.S. 1127, 112 S. Ct. 1063 (2002), ("A plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to his

1  actual damages and the amount of the defendant's profits.") (citation and quotation

2  marks omitted); <u>Los Angeles News Serv. v. Reuters Television Int'l, Ltd.,</u>

3  149 F.3d 987, 996 (9th Cir. 1998) ("a plaintiff may recover statutory damages

4  whether or not there is adequate evidence of the actual damages suffered by

5  plaintiff or of the profits reaped by defendant, in order to sanction and vindicate the

6  statutory policy of discouraging infringement").

7       Courts routinely award statutory damages as part of default judgments in

8  copyright infringement cases.  <u>See, e.g., Ortiz-Gonzalez v. Fonovisa</u>, 277 F.3d 59,

9  63-64 (1st Cir. 2002); <u>D.C. Comics Inc. v. Mini Gift Shop,</u> 912 F.2d 29, 37 (2d

10  Cir. 1990); <u>Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.,</u> 725 F.2d 1, 2-3

11  (1st Cir. 1983); <u>Getaped.com, Inc. v Cangemi,</u> 188 F. Supp. 2d 398, 400-403

12  (S.D.N.Y. 2002); <u>Microsoft Corp. v. Wen,</u> No. C 99-04561 MEJ, 2001 WL

13  1456654, at **5-6 (N.D. Cal. Nov. 13, 2001); <u>Perfect 10, Inc. v. Talisman</u>

14  <u>Commc'ns Inc.,</u> No. CV 99-10450 RAPMCX, 2000 WL 364813, at **3-5 (C.D.

15  Cal. Mar. 27, 2000).

16       Here, Blizzard seeks $150,000 in statutory damages for Simpson's willful

17  infringement of Blizzard's copyright.  Willfulness is indisputable because the

18  Complaint's pleaded allegation of willfulness is conclusively deemed true upon

19  default. <u>See</u> <u>Rodgers v. Anderson</u>, No. 04CIV1149 RJHAJP, 2005 WL 950021, *3

20  (S.D.N.Y. Apr. 26, 2005) ("In this case, defendants have defaulted and by virtue of

21  their default, are deemed to be willful infringers."); <u>Warner Bros. Entm't Inc. v.</u>

22  <u>Caridi</u>, 346 F. Supp. 2d 1068, 1072 (C.D. Cal. 2004) (since plaintiff "alleged (and,

23  by virtue of the entry of default, proved) willful infringement by [defendant],

24  [plaintiff] is entitled to received [sic] enhanced statutory damages in an amount not

25  to exceed $150,000" per infringement).  Additionally, willfulness is conclusively

26  established by Simpson's conduct after receiving (and in response to) Blizzard's

27  initial demand letter and after the lawsuit was filed. <u>See</u> <u>Peer Int'l Corp. v. Pausa</u>

28  <u>Records, Inc.,</u> 909 F.2d 1332, 1336 (9th Cir. 1990) (finding willful infringement

Mitchell Silberberg & Knupp LLP

3593497.5

1   when defendants continued to manufacture and distribute infringing materials after
2   written notice of termination of license).

3        Where, as here, a defendant's infringement was willful, the Court properly
4   can award maximum statutory damages on default.  See, e.g., Perfect 10, 2000 WL
5   364813, at **3-4 (awarding maximum amount of statutory damages for willful
6   infringement on default judgment); Warner Bros., 346 F. Supp. 2d at 1074
7   (awarding $150,000 per infringement on default judgment when willfulness
8   alleged in complaint).

9        Blizzard seeks the maximum statutory damages award, $150,000, for
10   Simpson's willful infringement of Blizzard's copyright.

11        **C.    Blizzard Is Entitled To Its Reasonable Attorneys' Fees And Costs**

12        As the "prevailing party," Blizzard is entitled to an award of an attorneys'
13   fees and "full costs."  17 U.S.C. § 505; see Streeter, 438 F. Supp. 2d at 1074
14   (plaintiff securing default judgment is "prevailing party").  At a minimum,
15   Blizzard is entitled to an award of attorneys' fees in the amount of $6,600.  See
16   L.R. 55-3 (for a default judgment award in excess of $100,000, attorneys' fees are
17   $5,600 plus 2% of the amount over $100,000).  However, Blizzard believes that
18   Simpson's egregious conduct justifies attorneys' fees in excess of this schedule.
19   Id. ("An attorney claiming a fee in excess of this schedule may file a written
20   request at the time of entry of the default judgment to have the attorney's fee fixed
21   by the Court.  The Court shall hear the request and render judgment for such fee as
22   the Court may deem reasonable.").  Specifically, Blizzard requests the Court award
23   Blizzard $39,777.76 as its reasonable attorneys' fees.  Rubin Decl., ¶¶ 23-25.

24        The factors governing an award of attorneys' fees in the non-default
25   judgment context provide a template for evaluating the reasonableness of
26   Blizzard's request here:  (1) the degree of success obtained; (2) frivolousness;
27   (3) motivation; (4) objective unreasonableness; and (5) the need to advance
28   considerations of compensation and deterrence.  See Magnuson v. Video

Mitchell
Silberberg &
Knupp LLP

3593497.5

1  <u>Yesteryear</u>, 85 F.3d 1424, 1432 (9th Cir. 1996).  Under this analysis, the presence

2  of "willful infringement is an important factor favoring an award of fees."

3  <u>Historical Research v. Cabral</u>, 80 F.3d 377, 378 (9th Cir. 1996).

4         Each of these five factors weighs in favor of awarding Blizzard's reasonable

5  attorneys' fees in this case.  As demonstrated above, (1) Blizzard was successful on

6  the merits; (2) Blizzard's claim for copyright infringement is not frivolous given

7  that its has established contributory copyright infringement; (3) Blizzard's primary

8  motivation is to receive compensation for past infringement and to deter future

9  infringement; (4) Simpson's conduct was willful and, thus, manifestly

10 unreasonable; and (5) an award of attorneys' fees would further the goal of

11 deterring similar infringing activities.  <u>See Caridi</u>, 346 F. Supp. 2d at 1074.

12 Blizzard requests that the Court award Blizzard its reasonable attorneys' fees.

13        Finally, the Copyright Act allows for the recovery of "full costs."  17 U.S.C.

14 § 505.  Blizzard's costs of suit in this action are $3,494.96.  Rubin Decl., ¶¶ 24-25.

15

16 **VI.    CONCLUSION**

17        As explained in detail below, Blizzard is entitled to default judgment on all

18 claims alleged in its Complaint.  Blizzard seeks an award consisting of:

19   •    Statutory damages in the amount of $150,000 for copyright
20        infringement;

21   •    A permanent injunction;

22   •    Costs in the amount of $3,494.96; and

23   •    Attorneys' fees in the amount of $39,777.76.

24

25   //

26   //

27   //

28

Mitchell Silberberg & Knupp LLP

3593497.5

22

1        Blizzard respectfully requests that the Court enter default judgment, and

2   grant Blizzard the requested relief.

3

4   Dated:  June 6, 2011                    MARC E. MAYER
                                            JILL P. RUBIN
5                                           MITCHELL SILBERBERG & KNUPP LLP

6

7                                           By: /s/ Marc E. Mayer

8                                               Marc E. Mayer
                                                Attorneys for Plaintiff
9                                               BLIZZARD ENTERTAINMENT, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Mitchell    28
Silberberg &
Knupp LLP

3593497.5                                   23